72 A.2d 442 (1950)
STATE
v.
PALMER.
Court of General Sessions of Delaware, New Castle.
March 29, 1950.
C. Edward Duffy, of Wilmington, for the State.
Elwood F. Melson, Jr., William E. Taylor, Jr., and Robert C. O'Hora, all of Wilmington, for the defendant.
*443 LAYTON, Judge.
It was clearly apparent to me that even had these Defendants been permitted to give evidence of the living conditions at the Workhouse, their testimony would have revealed at the very worst that the food was extremely bad, the guards brutal, provisions for medical treatment inadequate and that there was no adequate recreational or educational program in existence.[1] It is significant that none of the questions sought to elicit facts tending to show that the reason for the escape was based upon grave and immediate threat to life or health.
The law is well settled that intolerable living conditions in a prison afford no *444 justification for escape. Johnson v. State, 122 Ga. 172, 50 S.E. 65 (escape from Georgia chain gang to avoid unmerited punishment by guards); Hinkle v. Commonwealth, 66 S.W. 816, 23 Ky.Law Rep.1988 (fear on the part of prisoner in custody of Sheriff of being shot by an enemy who was then looking for him with a gun); State v. Cahill, 196 Iowa 486, 194 N.W. 191 (cell infested with bugs, worms and vermin, and without bed or chair; food consisting of an inadequate supply of bread alone); People v. Whiffle, 100 Cal.App. 261, 279 P. 1008 (intolerable living conditions and brutal and inhuman treatment by guards); State v. Davis, 13 Nev. 439, 33 Am.Rep. 563 (condition of jail filthy, loathsome and vermin infested).
The basis for this rather severe attitude on the part of the Courts is, nevertheless, founded upon sound public policy. Jail breaks are extremely disruptive of prison routine. They are frequently accompanied by serious injury to guards who attempt to prevent the escape or, thereafter, to the police whose duty it becomes to apprehend the fugitives. Not infrequently, as in this case, a mass escape is just cause for great public alarm and a long drawn out man hunt by the authorities of several states. To make it the province of every prisoner in every jail in the land to decide for himself whether conditions were so unbearable as to justify his escape would only serve to increase the number of attempts to break jail with all the attendant disturbance to prison routine and morale and subsequent likelihood of injury and bloodshed. Sound reasons of public policy have, therefore, dictated that a plea of justification for escape based upon intolerable prison conditions, if permissible at all, would be recognized only in the most extreme situations. Under the present state of the law, I conclude that the type of evidence attempted to be offered in justification of these escapes was insufficient to support the plea.
To defense counsels' strenuous argument that I committed error in ruling that under no circumstances would a plea of justification lie to an escape, I will say this: While such a plea may survive in theory, any extended consideration of the subject would be largely academic. Should a prison catch fire or a live steam pipe burst in a block of cells, a prisoner would be obviously justified in effecting an escape to save his life; and if he then promptly surrendered as soon as he was free of his immediate danger, as would be his duty, it would be inconceivable that he would thereafter be prosecuted for the technical escape. And in these more enlightened times it is difficult to suppose that prison conditions would ever become worse than in those cases just considered where the plea of justification was denied. Should such an unlikely case occur in the future, it can be met and disposed of when it arises. Therefore, if my ruling was too sweeping in effect,[2] it is sufficient to say that no substantive right was affected in these cases and the error, if any, was harmless. This ground for a new trial is accordingly denied.
This Defendant plead guilty in 1945 to several charges of robbery and was sentenced for a term of twelve years. It was while serving this sentence that he escaped. Counsel argues that when arraigned upon the several robbery charges, this Defendant, a comparatively young and uneducated boy, asked for counsel but was refused; that he was not aware of the seriousness of the charges against him when he plead guilty and that he was not accorded due process of law in the proceedings leading up to his sentence, See Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, and other allied cases, and that because his confinement was illegal, he could not be *445 guilty of an escape. The general rule is that informality or irregularity in the process of commitment, arrest or information is no justification for an escape. See authorities collected in Moore v. Commonwealth, 301 Ky. 851, 193 S.W.2d 448, 163 A.L.R. 1137. Some cases have held that where the commitment is void on its face, no prosecution for a subsequent escape will lie because the prisoner was illegally confined. I have examined the record of the commitment in the case of this Defendant and find not only that it is in order but that it fails to reveal Defendant's request for counsel and the denial of such right by the Court. Conceding, arguendo, that Palmer did ask for counsel and was refused, the record fails to disclose that fact and cannot be said to be void on its face. There is another line of authority which holds that regardless of the irregularity of the confinement, the prisoner has no right to break jail because the writ of habeas corpus is always available to determine the lawfulness of his incarceration, and having failed to adopt the recognized legal means of securing his release, he cannot defend his escape by pleading the invalidity of his commitment. Commonwealth ex rel. Penland v. Ashe, 142 Pa.Super. 403, 17 A.2d 224. I prefer this latter line of decisions as being based upon sounder considerations. In either event, there is no merit to this assignment of error and it is accordingly denied.
Error is further suggested in that Palmer was indicted under the name of Jesse W. Palmer whereas, in fact, his name was Jack Palmer, Jr. It is contended that the indictment being invalid, his conviction cannot be sustained. It is conceded that in the robbery indictments, Palmer was named "Jack Palmer, Jr." and that in the indictment here he is called "Jesse" Palmer. The evidence shows, however, that when committed on his sentence for robbery, he signed the commitment papers as Jesse W. Palmer and for four years thereafter referred to himself and was always known as Jesse Palmer. He did not deny these facts and I think is bound by his conduct in calling himself Jesse W. Palmer. Of more importance, when counsel asked leave on behalf of this Defendant to withdraw his original plea of guilty, to not guilty of escape, no contention was made by his counsel as to the irregularity in respect of his name. His counsel then referred to him as Jesse W. Palmer and when directly addressed by the Court as Jesse W. Palmer concerning his desire to change his plea, he answered to the name of Jesse W. Palmer. He cannot be heard now to say that his indictment is irregular for this reason.[3] Wharton's Criminal Procedure, Vol. 1, Sec. 145.
Finally, it is said that I erred in insisting that this Defendant, and his codefendants, stand trial without allowing adequate time to counsel for the preparation of their defense. It is sufficient to say that I appointed counsel, Mr. Melson, five days prior to the trial date. On the following day I acceded to Mr. Melson's request that Mr. O'Hora be allowed to assist him. Thereafter, Mr. Melson and Mr. O'Hora asked William E. Taylor, Esq., to assist them and I approved their application that he be joined with them as Court appointed counsel for the defense in these cases. In my judgment, Messrs. Melson and O'Hora were entirely capable of presenting these defenses and had ample time within which to prepare. The fact that Mr. Taylor came into this proceeding at a very late date does not justify the argument that too little time was allowed for preparation.
Motions for new trials denied.
NOTES
[1] It is only fair to the prison authorities to state at this juncture that subsequent investigations of the most thorough nature conducted by experts in penology have revealed that the complaints in respect of intolerable living conditions at the institution were of extremely doubtful validity. The only complaint of any merit was that the food, though sufficient in quantity and quality was badly prepared. However, I have carefully limited this opinion to the evidence sought to be shown at the trial.
[2] A few authorities bearing on justification for escape have been cited. In 1 Hale, P.C. 611 (1736) it is said: "If a prison be fired by accident and there be a necessity to break prison to save his life, this excuseth the felony." In State v. Davis, and State v. Whipple, elsewhere considered here, the plea was discussed but dismissed because the Court decided that the evidence was insufficient to justify the plea.
[3] This ruling should be distinguished from that of Judge Wolcott in State v. Norris, Gen.Sess., 71 A.2d 755, which sustained motions by this same Defendant to quash an indictment against him upon the ground of misnomer. In that case Palmer was indicted for robbery in connection with the escape which is the subject of this opinion. However, the motion in the Norris case was supported by the record of his conviction for robbery under the name of Jack Palmer, Jr., and by an affidavit by Palmer that his name was Jack Palmer, Jr. At the hearing on this motion the State did not challenge the effect of this supporting evidence as was done in the case at Bar.