No. 23563.

A. J. ALLEN v. THE PEOPLE OF THE STATE OF COLORADO.
(485 P.2d 886)

Decided June 14, 1971.

---

114

MOYERS and DUNLAP, ROBERT DUNLAP, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, PAUL D. RUBNER, Assistant, EUGENE C. CAVALIERE, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Hodges.

Defendant Allen was tried by a jury and convicted of attempted assault with a deadly weapon. On writ of error, the defendant urges reversal for two reasons: First, he contends there is no such crime as attempted assault with a deadly weapon, and second, he claims the trial court erroneously refused to give his tendered instruction on his theory of the case. Both of these contentions are valid. We therefore reverse the judgment of conviction.

The information charging defendant states that on October 24, 1967, the defendant did "[a]ttempt to make an assault upon one Earl Wayne Tysver with a deadly weapon . . . in violation of Colorado Revised Statutes 1963, 40-2-34 and 40-25-1. . . ."

The evidence at trial reveals that the defendant was stopped by police officers Tysver and Gearhart at about 12:45 a.m. on October 24, 1967 because defendant was driving an automobile with an expired temporary permit.

Officer Tysver testified that, after he stopped defendant's car, he approached defendant on the driver's side of the car and asked him for his driver's license. Defendant appeared to be reaching for his wallet, however, he pulled a gun out of his right rear pocket. Although he dropped the gun, his arm came across as if to point at Officer Tysver. Defendant then attempted twice again to reach for the gun but was restrained at gunpoint by Officer Tysver.

Defendant testified that he was trying to hide the gun in question and that he was carrying the gun for his own protection. This testimony was corroborated by the testimony of a female companion who was riding in the car with the defendant at the time he was stopped.

I.

With reference to the alleged offense of attempt to commit an assault with a deadly weapon, we hold that there is no such offense in Colorado.

116

■■ The question of whether a crime exists or not is clearly one of statutory construction, since C.R.S. 1963, 40-1-1 defines a crime in terms of a "[v]iolation of a public law. . . ." This does not deprecate the principle, previously announced by this court, that the common law may be used in aid of the meaning to be given statutory language when such language is not defined in the statute. *See Gallegos v. People,* 159 Colo. 379, 411 P.2d 956.

The pertinent statutes to be construed in the instant case are C.R.S. 1963, 40-2-33 and 40-2-34 and 1967 Perm. Supp., C.R.S. 1963, 40-25-1.

■ C.R.S. 1963, 40-2-33, entitled "What is an assault," defines an assault as "[a]n unlawful *attempt* coupled with present ability to commit a violent injury on the person of another." (Emphasis added.) An assault is therefore a particular type of an attempt, as defined by our statute, and accordingly, we have no occasion to determine the common law definition of an assault. What then is a criminal attempt?

Prior to such inquiry, we note that although defendant was charged under C.R.S. 1963, 40-25-1, defining criminal attempt, that statute was repealed and re-enacted on April 7, 1967, several months prior to defendant's arrest. No claim is made in defendant's behalf as to the inaccurate statute citation set forth in the information. Criminal attempt is defined by 1967 Perm. Supp., C.R.S. 1963, 40-25-1 as follows:

"An attempt to commit a crime requires that the person has an intent to perform any act, and to obtain any result which, if accomplished, would constitute such crime, and that he does any act toward the commission of the crime which demonstrates, under the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

■■ As above defined, the commission of a criminal attempt under our statutes requires the intent to commit a specific crime. Attempting an assault would

require a person to *intend to "attempt . . .* with present ability to commit a violent injury on the person of another." Perhaps philosophers or metaphysicians can intend to attempt to act, but ordinary people intend to act, not to attempt to act. As stated by one court, nearly one-hundred years ago, "[T]he refinement and metaphysical acumen that can see a tangible idea in the words "an attempt to attempt 'to act' is too great for practical use. It is like conceiving of the beginning of eternity or the starting point of infinity." *Wilson v. State,* 53 Ga. 205; *see generally,* Annot. 79 A.L.R.2d 597 (1961); Beale, *Criminal Attempts,* 16 Harv. L. Rev. 491 (1902). In *State v. Davis,* 108 N.H. 158, 229 A.2d 842, it is succinctly stated that:

"As to crimes of this sort it is true as argued by defendant that 'there can be no crime of an attempt to commit an attempt.'"

The argument is made that an attempted assault should be construed to be an assault *without* the element of present ability. *E.g., State v. Wilson,* 218 Ore. 575, 346 P.2d 115. We note that in *Wilson* the Oregon court had no statute defining the crime of assault alone. The court went on to uphold the validity of the charge of attempted assault with a deadly weapon on the theory that an assault should be viewed as a "separate substantive crime and not as an attempted battery." Our statute, C.R.S. 1963, 40-2-33, defines an assault in terms of an attempt to injure another, or an attempt to commit a battery. We therefore do not regard this *Wilson* case as persuasive in our analysis of this issue.

When a person is charged with an assault, it is clear that "present ability" must be construed in the light of the particular situation. The policy behind criminal statutes is to safeguard the public from harm from individuals. In construing the criminal assault statute therefore factors such as the gravity of the potential harm and the uncertainty of the result are to be included

in appraising the actor's "present ability." *Cf., Johnson v. People,* 174 Colo. 413, 484 P.2d 110.

In view of our determination that the offense with which the defendant was charged is non-existent in Colorado, the judgment of the trial court must be reversed and the information ordered dismissed.

II.

Although the defendant's contention that the court should have instructed the jury in some manner regarding his theory of the case, *viz.,* that he was attempting to hide the gun from the police officers, is rendered moot in view of our holding hereinabove set forth, we deem it advisable to briefly comment on this subject.

We have examined all of the instructions given by the trial court, and we conclude that the court erred in not submitting defendant's theory of the case to the jury. Instruction No. 3 deals with the material allegations of the information and states that if the jury finds that the People proved each and every allegation beyond a reasonable doubt, then they should find the defendant guilty. In refusing defendant's tendered instruction the trial court stated that, "[I]f the jury thinks that the People have proved [the allegations] ... then obviously the jury is not willing to accept defendant's testimony that he was merely trying to get the gun out of his pocket and conceal it ... and I feel that Instruction No. 3 covers the defendant's defense." Nothing in any instruction refers to defendant's defense that he was trying to hide the gun.

The law in Colorado is clear that if the defendant's theory of the case is supported by some evidence, he is entitled to an instruction on it so long as the instruction is in the proper form. *See, Zarate v. People,* 163 Colo. 205, 429 P.2d 309; *Wertz v. People,* 160 Colo. 260, 418 P.2d 169; *Sterling v. People,* 151 Colo. 127, 376 P.2d 676; *Leopold v. People,* 105 Colo. 147, 95 P.2d 811. Since defendant's theory of the case was supported by competent evidence, the court erred in not submitting

an instruction relating to his theory of the case.

Judgment reversed and cause remanded with directions to dismiss the information.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE DAY and MR. JUSTICE GROVES concur.