# No. 25807

## The People of the State of Colorado v.
## Anthony Joseph Duran
(524 P.2d 296)

Decided July 15, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, David A. Sorenson, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Stephen C. Rench, Deputy, T. Michael Dutton, Deputy, for defendant-appellant.

MR. JUSTICE KELLEY delivered the opinion of the Court.

The defendant was charged, tried by a jury, and convicted of first-degree murder of Ricardo Lopez in violation of C.R.S. 1963, 40-2-3(1-3). On appeal the defendant relies upon two assignments of error for reversal of his conviction. They are:

1. The trial court erred in allowing the district attorney to read aloud to the jury a statement made by defendant shortly after the shooting incident.

2. The trial court erred in refusing to give to the jury a tendered instruction pertaining to fists as a deadly weapon.

We find no merit in either contention and, therefore, affirm.

A brief statement of the facts will suffice to lay a proper background for a discussion of the two issues. The shooting occurred in the New Mexico Inn at 2218 Larimer Street, Denver, at approximately 1:30 a.m., September 23, 1971.

The defendant first shot and wounded Chris Vialpando, a waiter, and shortly thereafter shot and killed Ricardo Lopez, another patron. In addition to Vialpando, Lopez and the defendant, one other person played an important role in the events which preceded the shooting. He was a friend of the defendant identified in the record only as "Pancho."

The trouble began when the defendant said something which offended Vialpando, resulting in a brief encounter. The defendant was knocked to the floor. Vialpando then helped the defendant up and they shook hands, thus ending

the altercation. As Vialpando walked toward the bar, Pancho "jumped" Vialpando, starting another altercation.

During this new fight the defendant went behind the bar and removed a .22 caliber revolver from a drawer. (Defendant had prior knowledge of the location of the revolver.) Thus armed with the revolver, the defendant walked toward the two combatants and shot Vialpando in the stomach, ending the fight. Pancho hurriedly left the premises. The defendant was moving backwards toward the front door when Lopez came out of the rest room and walked toward the front door at a normal pace with his coat over his arm.

At this point a material conflict in the evidence occurs. The defendant testified that Lopez asked him to give him the gun. Disinterested witnesses said that they heard no conversation between the two and that it appeared that Lopez was walking toward the door in order to exit the premises. When Lopez came within a few feet of the defendant the defendant raised his arm and fired point blank into Lopez' mouth, killing him instantly.

The defendant admits that he shot the victim, but claims that he was afraid that if he gave the gun to Lopez that Lopez would kill him. The defendant did not know Lopez — he had not had any words nor any altercation with him, nor was there any other evidence in the record that Lopez intended to harm him. The jury, on the basis of the evidence, could have concluded that the victim was an innocent bystander.

The defendant hurriedly left the building, but was immediately stopped by police officers who were cruising in the area. Upon command to stop, the defendant threw the gun into the doorway of a nearby building and stopped a few feet away. As the officers approached the defendant he stated: "I shot both of those wetbacks. I hope they both die." After the defendant volunteered this statement, the officers arrested him and took him to police headquarters.

Within an hour Detective Williams gave the defendant his *Miranda* warnings, which the defendant acknowledged by signing the standard *Miranda* advisement form. He also signed

a waiver of his right to remain silent. Detective Williams' interrogation resulted in a signed statement in which the defendant admitted that he removed the gun from the drawer behind the bar and that he then shot two men, claiming that the first shooting (Vialpando) was done in self-defense.

I.

█ In his brief the defendant argues his first proposition thusly:

"The Defendant submits allowing the prosecution to read aloud the statement made by the Defendant shortly after the shooting incident, was unnecessary and prejudicial to the Defendant. Certain parts of the statement, such as, 'What's the penalty for killing wetbacks?', 'Let me out and I'll kill some more.', and 'I hope I killed both of those fuckers', were highly inflammatory statements.

"The court had previously ruled that the statement complied with the requirements of *Miranda,* and the police officer who took the statement was allowed to read it to the jury. (884-87) However, this repeated reading by the prosecutor after the jury had already heard the contents of the statement once, was unnecessary and prejudicial, and denied the Defendant a fair trial."

The repeated reading to which reference is made occurred when the defendant was on the witness stand. The defendant on direct examination had stated that the signature on the statement was not his and that he had no recollection of having made the statements attributed to him. On cross-examination the district attorney inquired as to whether the defendant had answered each of the questions as per the statement. This is what defendant argues constituted the prejudicial repetition.

We find no error in the manner in which the trial court permitted the cross-examination to be conducted. The district attorney was entitled to cross-examine on matters that the defense placed in issue. The trial court did not abuse its discretion in permitting the cross-examination to take this form. *Burr v. Green Bros. Sheet Metal,* 159 Colo. 25, 409 P.2d 511 (1966); *Archina v. People,* 135 Colo. 8, 307 P.2d 1083 (1957).

## II.

Defendant's second and final contention is that the court erred in not giving a tendered instruction relating to fists as a deadly weapon, claiming that this was his theory of the case.

We concede the general proposition that the defendant is entitled to an instruction on his theory of the case. The rule is subject to two conditions: the instruction must be in proper form, and it must be supported by evidence in the record. *Gould v. People,* 167 Colo. 113, 445 P.2d 580 (1968); *Sterling v. People,* 151 Colo. 127, 376 P.2d 676 (1962).

The person who struck the defendant with his fists was Vialpando, with whose shooting defendant was not charged. The victim, Ricardo Lopez, never touched, threatened to touch, or assaulted the defendant at any time. They were total strangers.

We therefore need not analyze the tendered instruction to determine whether it was a correct statement of the law relating to fists as a deadly weapon. There simply was no evidence presented that would justify the giving of such an instruction with respect to Lopez. The trial court did not err in refusing the tendered instruction.

The judgment is affirmed.