**No. 26259**

**The People of the State of Colorado v. Bobby Eugene Salas**

(538 P.2d 437)

Decided July 7, 1975.                    Rehearing denied August 5, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Albert T. Frantz, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The sufficiency of the evidence and the instructions to the jury are the key issues on appeal. The defendant also claims that the failure of the trial court to require the prosecution to elect between counts was reversible error and that the concurrent sentences imposed against the defendant must be set aside. We affirm.

An incriminating web of circumstantial evidence was created by a series of criminal acts which culminated in the murders of both Russell Forrest Brenner and his wife, Evelyn. The criminal transaction involved acts which occurred at the Mile High Reporting School and at the Brenner residence. The Mile High Reporting School, a school for court reporters, was owned and operated by the Brenners and was located not far from the Brenners' home. Robert Dean Kautz had been a student at the Brenners' court reporting school and had been discharged by the Brenners. The crimes which were committed resulted in charges against both the defendant, Bobby Eugene Salas, and Robert D. Kautz. Kautz plead guilty to murder, and his case is not before us.

Salas and Kautz were charged with first-degree murder for taking the lives of both Russell Forrest Brenner and Evelyn Brenner. 1971 Perm. Supp., C.R.S. 1963, 40-3-102.[1] The criminal transaction also brought about charges of second-degree burglary (1971 Perm. Supp., C.R.S. 1963, 40-4-203),[2] first-degree burglary (1971 Perm. Supp., C.R.S. 1963, 40-4-202),[3] and theft (1971 Perm. Supp., C.R.S. 1963, 40-4-401).[4] Salas plead not guilty and was convicted by a jury on all charges except second-degree burglary of the Mile High Reporting School. He was sentenced to life imprisonment, and the remaining sentences were imposed to run concurrently with the life sentence.

## I.
### Sufficiency of the Evidence

In determining whether a motion for a judgment of acquittal should be granted, the evidence must be gauged by the standard which we initially set forth in *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973):

"The issue before the trial judge is whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."

The guilty verdicts which were returned by the jury are supported by circumstantial evidence which, when viewed in the light most favorable to the prosecution, provides proof of guilt beyond a reasonable doubt. The evidence which supports the jury's verdict was circumstantial, but the quality and the weight of the evidence was sufficient to establish a prima facie case and to create a jury issue on each of the charges on which the jury convicted. When a prima facie case has been made by the prosecution, the trial judge is compelled to submit the issue to the jury for its determination. *People v. McClendon*, 188 Colo. 140, 533 P.2d 923 (1975); *People v. Durbin*, 187 Colo. 230, 529 P.2d 630 (1974); *People v.*

---

[1] Now section 18-3-102, C.R.S. 1973.
[2] Now section 18-4-203, C.R.S. 1973.
[3] Now section 18-4-202, C.R.S. 1973.
[4] Now section 18-4-401, C.R.S. 1973.

*Atencio*, 187 Colo. 226, 529 P.2d 636 (1974); *People v. Marques*, 184 Colo. 262, 520 P.2d 113 (1974); *Digiallonardo v. People*, 175 Colo. 560, 488 P.2d 1109 (1971); *Corbett v. People*, 153 Colo. 457, 387 P.2d 409 (1963).

*The Facts:*

The bodies of Russell Forrest Brenner and Evelyn Brenner were found in the bedroom of their home. They had both been shot with a .22 caliber pistol. Evelyn Brenner also had her jugular vein cut with a knife that was found at the scene. Russell Forrest Brenner suffered cuts and head injuries and bled profusely prior to his death.

The discovery of the Brenners' bodies precipitated a comprehensive police investigation and resulted in the arrest of Kautz and Salas near Trinidad, Colorado. At the time of their arrest, Kautz was driving the Brenners' Mercury Cougar at a high rate of speed, and Salas was in the back seat. Salas claimed, at the time of his arrest, that he was a hitchhiker and that Kautz picked him up at Littleton.

A search of the Brenners' car produced a .22 caliber pistol with blood stains on it. In addition, .22 caliber cartridges were found in Salas' pocket which were identical to live cartridges resting on Evelyn Brenner's body. Ballistics tests indicated that the defendant's pistol could have fired the bullets which killed the Brenners, although a positive identification could not be made because of the damaged condition of the pistol. However, it was shown that the pistol in the possession of Salas had eight lands and grooves with a right twist, which corresponded to the murder weapon. The blood on the gun was of the "O" type which was the blood grouping for both Salas and Russell Forrest Brenner. Salas had no cuts or abrasions on his body, but a number of small blood spatters were found on his clothing. When the car was searched, the police also found Evelyn Brenner's underclothing and stockings.

The police investigation centered on the defendant's clothing and on the scene of the crime. An autopsy of Evelyn Brenner indicated that she was six months pregnant and had intercourse not more than twenty-four hours prior to her death. Semen stains were found on the defendant's pants and on Evelyn Brenner's bathrobe. Serological tests demonstrated that the semen contained a "B" blood group factor which corresponded with Evelyn Brenner's blood type and a vaginal specimen which was obtained in the autopsy.

Rug fibers were taken from the defendant's shorts that were identical to the rug fibers in the Brenners' bedroom. The prosecution also offered a jacket, which the defendant owned and which was found in his car, bearing the same incriminating rug fibers from the Brenners' bedroom.

Following the defendant's arrest, the defendant made some cryptic admissions in jail to the effect that Kautz had really gotten him into trouble and that he was concerned that he had left a clear fingerprint someplace. He also admitted, in his crude vernacular, that he had had intercourse with the man's wife and that because neither she nor her husband

liked it very much, they had taken care of both of them.

*Murder*:

■ The prosecution introduced evidence which was sufficient in both quality and quantity to prove felony-murder and premeditated first-degree murder. Felony-murder occurs when a murder is committed in the commission of certain designated felonies. 1971 Perm. Supp., C.R.S. 1963, 40-3-102(1)(b).[5]

■ The felony in this case was first-degree burglary. The prosecution's evidence proved that Salas was in the Brenner home and that he intended to commit the crime of theft. The keys to the Brenners' Mercury Cougar were at the Brenners' home where the car was parked, and the defendant was in the stolen vehicle at the time of his arrest. Prima facie cases of first-degree burglary and theft were thus proven. 1971 Perm. Supp., C.R.S. 1963, 40-4-202;[6] 1971 Perm. Supp., C.R.S. 1963, 40-4-401.[7] *See People v. Bueno*, 188 Colo. 396, 534 P.2d 1196 (1975); *People v. McClendon, supra; People v. Drumright*, 181 Colo. 137, 507 P.2d 1097 (1973).

Moreover, the defendant's admissions, coupled with the evidence which was before the jury, established each of the elements of premeditated first-degree murder. 1971 Perm. Supp., C.R.S. 1963, 40-3-102(1)(a).[8]

*Alibi*:

■ The defendant's theory of defense was alibi. The alibi defense was for the jury. *See Vigil v. People*, 134 Colo. 126, 300 P.2d 545 (1956). Testimony was presented to show that the defendant and Kautz were together during the time period that marked the murder of the Brenners. The defendant's evidence was that he and Kautz were in several downtown Denver bars at the time the double murder occurred and that it would have been impossible for them to have committed the crime. This was a jury issue which was resolved against the defendant.

## II.
### Instructions

The defendant contends that the evidence was insufficient to justify an instruction of premeditated first-degree murder, felony-murder, first-degree burglary, and theft. He claims that possibilities never add up to a probability which supports an instruction to the jury or a later conviction. In our view, the circumstantial evidence, when tied together as it was in this case, supports and provides a foundation for instructions on each of the crimes which are before us. The instructions, when considered together, advised the jury of the law which was to guide them in their deliberations. *See McGregor v. People*, 176 Colo. 309, 490 P.2d 287 (1971);

---

[5]Now section 18-3-102(1)(b), C.R.S. 1973.
[6]Now section 18-4-202, C.R.S. 1973.
[7]Now section 18-4-401, C.R.S. 1973.
[8]Now section 18-3-102(1)(a), C.R.S. 1973.

*Gallegos v. People*, 166 Colo. 409, 444 P.2d 267 (1968); *United States v. Hayes*, 477 F.2d 868 (10th Cir. 1973); *cf. People v. Archuleta*, 180 Colo. 156, 503 P.2d 346 (1972); *Allen v. People*, 175 Colo. 113, 485 P.2d 886 (1971).

■ Moreover, contrary to the defendant's arguments, the jury was properly instructed on reasonable doubt, as required by the Colorado Jury Instructions 3:4 and 3:5, and the instruction precluded a finding of guilt based on surmise, conjecture, or speculation.

### III.
### Failure to Elect

■ The defendant asserts that the district attorney should have been compelled to elect which charge he was going to prosecute and to abandon charges on the remaining crimes which were committed. He contends that all of the offenses arose out of one transaction and that our Colorado statutes and the Double Jeopardy Clause of the United States Constitution foreclose the multiple charges. *U. S. Const.* amend. V. We disagree.

■ In 1971 Perm. Supp., C.R.S. 1963, 40-1-508,[9] the legislature provided: "When any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." *See Johnson v. People*, 174 Colo. 413, 484 P.2d 110 (1971). Moreover, the district attorney is forced by law to prosecute all offenses which arise from a single event because of section 2, which provides:

"If the several offenses are known to the district attorney at the time of commencing the prosecution and were committed within his judicial district, all such offenses upon which the district attorney elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode. Any offense not thus joined by separate count cannot thereafter be the basis of a subsequent prosecution."

As we view the statute, it does not conflict with the Double Jeopardy Clause of the United States Constitution. *See United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

### IV.
### Concurrent Sentences

■ The defendant was sentenced for the crimes which the jury found he had committed. All sentences were imposed concurrently with the life sentence which the jury ordered. We perceive no error.

### V.
### Remaining Issues

The remaining arguments which have been raised do not require comment.

Therefore, we affirm.

---

[9]Now section 18-1-408, C.R.S. 1973.