20123

The STATE, Respondent, v. James W. WORLEY, Appellant.

(220 S. E. (2d) 242)

*Messrs. P. Lewis Pitts, Jr.,* and *W. Gaston Fairey,* of Columbia, *for Appellant,* cite:

552

Messrs. *Danel R. McLeod, Atty. Gen., Joseph R. Barker, Asst. Atty. Gen.,* and *James C. Anders, Sol.,* of Columbia, *for Respondent,* cite:

December 4, 1975.

NESS, Justice:

This appeal involves the question of when a defendant who contends he escaped from lawful confinement due to inadequate medical treatment is entitled to have the affirmative defense of necessity submitted to the jury. In the instant case the trial judge refused to charge the defense of necessity.* We affirm.

James Worley voluntarily left Richland County Prison Camp in June, 1972. He had opportunities to report to the authorities but failed to do so. About two years after his escape, Worley was arrested in Florida and returned to South Carolina in July, 1974. He was convicted of escape and sentenced to one year imprisonment.

The testimony, viewed most favorably to the appellant, showed the living conditions at the Prison Camp were undesirable. Appellant contracted a severe case of poison ivy on his forearm. The poison ivy caused swelling and developed into a rash and open, running sores and appellant was given some calamine lotion by a camp official. On three occasions appellant requested to see a physician; these requests were denied and appellant voluntarily poured chlorox bleach on the open sores to relieve the pain. When this proved unsatisfactory, appellant, fearing he was in danger of serious bodily harm, departed the Camp. He went to Georgia and saw a doctor who successfully treated the condition by administering a shot and some medicine.

The only analogous South Carolina decision is *Copeland v. Manning,* 234 S. C. 510, 109 S. E. (2d) 361 (1959). There a defendant argued his confinement was illegal as justification for his escape. This Court held prisoners may not resort to self help and leave the place of confinement

---

* The parties have argued whether the defense should be labeled necessity or duress. For the purposes of this appeal, we treat them as the same defense.

and challenges to the legality of confinement must be addressed to the courts.

Courts have been reluctant to consider a defense of necessity in escape cases based on prison conditions or lack of medical treatment. Sound reasons underly this policy. It is not the prerogative of prisoners to decide escape is justified. Legal channels are available to contest inadequate treatment. If the defense of necessity was commonly available, the number of escape attempts would increase. Prisoners would risk later "prosecuting the prison" to justify leaving. Escapes would be encouraged even though they are dangerous to prison guards, officials and the public and are disruptive of prison routine. See *State v. Palmer,* 6 Terry 308, 45 Del. 308, 72 A. (2d) 442 (1950).

There possibly may be situations when a prisoner's dilemma is so serious an escape could be justified. If a prisoner is in need of emergency medical treatment to avoid death or immediate, serious permanent bodily injury, he may have a defense of necessity submitted to the jury. Certain minimum conditions are set forth as guidelines which must be satisfied before this defense is available.

(1) The prisoner must have informed prison officials of the condition, in writing, unless admitted by the prison officials, and have been denied professional medical care;

(2) There must not be time to resort to the courts;

(3) The escape must be without use or threat of use of force:

(4) The escapee must promptly seek professional medical treatment;

(5) The treating physician, or if he is unavailable, a physician responding to a hypothetical question, must testify the prisoner was *actually* in danger of death or immediate serious permanent bodily injury unless the prisoner was given prompt professional medical treatment;

(6) After seeing the physician, the prisoner must immediately surrender himself to the authorities.

We have carefully considered the cases cited by counsel and consider *People v. Lovercamp,* 43 Cal. App. (3d) 823, 118 Cal. Rptr. 110 (1974) most persuasive. Although *Lovercamp* deals with threats of assaults as a basis for invoking a defense of necessity in escape cases, similar considerations apply. Several of these guidelines were included in the *Lovercamp* decision.

> The appellant remained at large for two years and for this reason alone his plea of necessity was properly rejected by the court.

The limitations we have placed on the availability of this defense are necessarily rigid. The prison administration and the courts remain the normal channel for a meritorious complaint. The demands of public safety and efficient running of the prison system must be balanced against the potentially meritorious assertion of a prisoner. The standard we have established attempts to accommodate both interests. It affords a prisoner who finds himself in unusual and *dire* circumstances a reasonable alternative to death or serious bodily injury. Likewise, it protects against assertions by those prisoners who would endanger prison life and public safety by escaping and fabricate charges of inhuman treatment or neglect as an afterthought to their flight from justice.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.