The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Shane McKNIGHT, Defendant-Appellant.

No. 80SA251.

Supreme Court of Colorado,
En Banc.

April 13, 1981.

Rehearing Denied April 27, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Mary E. Ricketson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Ilene P. Buchalter, Deputy State Public Defender, Denver, for defendant-appellant.

HODGES, Chief Justice.

Appellant McKnight was convicted of escape from the Colorado State Penitentiary. On appeal, he urges reversal of that conviction on several grounds. We affirm the judgment of the trial court.

Appellant and eight other inmates escaped from the penitentiary. Appellant was subsequently recaptured and charged with escape in violation of section 18–8–208, C.R.S.1973 (1978 Repl. Vol. 8). Following a jury trial, he was found guilty and sentenced to a term of not less than five nor more than eight years imprisonment, to be served consecutively with the sentence he was serving at the time of escape.

## I.

Appellant's first claim of error is that the trial court improperly admitted into evidence a statement made by him in response to questions asked by John Snow, chief investigating officer for the penitentiary. Following his recapture, appellant was advised of his *Miranda* rights. Thereafter, in response to questions concerning the escape, appellant told Officer Snow:

"Shit, I won't tell a fucking thing. I'm doing a bunch now. If I get a chance I'll do it again. I won't tell you a fucking thing."

The district attorney sought to introduce appellant's statement to Officer Snow to

rebut the defense theory of choice of evils. Defense counsel sought to have the statement excluded, however, because the district attorney had failed to disclose it pursuant to the defense's Crim.P. 16 I(a)(1) discovery motion. Specifically, the defense had sought to discover,

"[a]ny statement, whether oral, written, recorded or otherwise transcribed or summarized in writing, made by the Defendant [appellant] to any person, witness or law enforcement officer before, at the time of or after his arrest."

Defense counsel also sent a letter to the district attorney requesting discovery. Despite these inquiries, the district attorney never advised defense counsel of the existence or contents of appellant's statement to Officer Snow.

Crim.P. 16 I(a)(1)(II) provides in pertinent part:

"[T]he prosecuting attorney upon request of the defense counsel shall disclose to the defense counsel the following material and information which is within the possession or control of the prosecuting attorney:

*   *   *   *   *   *

(II) Any written or recorded statements and the substance of any oral statements made by the accused . . . ."

The record indicates that the district attorney had actual notice of appellant's statement at least two days prior to the commencement of the trial.[1] In overruling appellant's objection to the introduction of appellant's statement, the district court ruled that Crim.P. 16 I(a)(1)(II) did not entitle the defense to discover every state-

ment made by the appellant in the possession or control of the district attorney, but only to discover those statements directly relating to the particular case.

The provisions of Part I(a)(1) of Crim.P. 16 differentiate between discovery of statements made by "witnesses," Crim.P. 16 I(a)(1)(I), and statements made by the accused, Crim.P. 16 I(a)(1)(II).[2] With regard to statements by witnesses, the district attorney must disclose those statements in his possession or control which are relevant. Crim.P. 16 I(a)(1)(I). *See People v. Smith,* 185 Colo. 369, 524 P.2d 607 (1974). But as to statements made by the accused in the possession or control of the district attorney, the statute sets forth no such qualifying factor. Crim.P. 16 I(a)(1)(II).

The trial court, in effect, ruled that the district attorney was required to disclose only those statements of an accused which are *directly* relevant to the charges pending against the accused. Because appellant's statement to Officer Snow was not relevant until appellant presented his choice of evils theory of defense, the trial court stated that discovery of this statement was not required by Crim.P. 16. The trial court misinterpreted the meaning and import of Crim.P. 16 and improperly admitted the statement into evidence.

When a statement sought to be discovered is that of the accused, the district attorney has a greater duty to disclose than in any other circumstances. *See* Crim.P. 16 I(a)(1)(II). We wish to make it clear and emphasize that Crim.P. 16 requires that *every* statement made by the accused which is in the possession or control of the district

---

1. Because the parties do not dispute that the district attorney had actual knowledge of appellant's statement to Officer Snow, we need not consider whether the facts in this case establish constructive possession or control of the information by the district attorney. *See DeLuzio v. People,* 177 Colo. 389, 494 P.2d 589 (1972); *Ortega v. People,* 162 Colo. 358, 426 P.2d 180 (1967).

2. Crim.P. 16 I(a)(1)(I) provides that the prosecution, upon request by defense counsel, must disclose, if within its possession or control:

"The names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with their *relevant* written or recorded statements." (Emphasis supplied.)

When the statement requested is that of the defendant, however, Crim.P. 16 I(a)(1)(II) requires that the prosecution disclose, if within its possession or control:

"*Any* written or recorded statements and the substance of any oral statements made by the accused, or made by a codefendant, if the trial is to be a joint one." (Emphasis supplied.)

attorney and which relates in any way to the series of events from which the charges pending against the accused arose must be disclosed to the defense upon an appropriate motion.

Appellant contended at trial that his escape from the state penitentiary was justified as a choice of evils. Specifically, appellant claimed that he had to leave the tension-filled environment of the prison or lose his sanity.[3]

■ Section 18–1–702(1), C.R.S.1973 (1978 Repl. Vol. 8), provides:

"[C]onduct which would otherwise constitute an offense is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no conduct of the actor, and which is of sufficient gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

The choice of evils defense may be available to justify a prison escape if the facts of the case, as a matter of law, satisfy the conditions stated in section 18–1–702, C.R.S.1973. *See, e. g., People v. Handy*, 198 Colo. 556, 603 P.2d 941 (1979), and cases cited therein. *See also People v. Strock*, Colo., 623 P.2d 42 (1981) for an excellent discussion of the choice of evils defense and the defense of duress in escape cases.

■ Ordinarily, for the defense of choice of evils to be available, it must be shown that the defendant's conduct was necessitated by a specific and imminent threat of injury to his person under circumstances which left the defendant no reasonable alternative other than the violation for which he is charged. *People v. Handy, supra; People v. Robertson*, 36 Colo.App. 367, 543 P.2d 533 (1975). In addition, where the charge is escape, the defendant must also show that the escape was committed without violence, *State v. Reese*, 272 N.W.2d 863 (Iowa 1978); *State v. Worley*, 265 S.C. 551, 220 S.E.2d 242 (S.C.1975), and that the defendant voluntarily submitted to authorities as soon as a position of safety was reached. *United States v. Michelson*, 559 F.2d 567 (9th Cir. 1977); *People v. Strock, supra; People v. Handy, supra; State v. Reese, supra; State v. Worley, supra; State v. Baker*, 598 S.W.2d 540 (Mo.App.1980); *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal.Rptr. 110, 69 A.L.R.3d 668 (1975).

■ In this case, appellant alleges that he was forced to escape or risk losing his sanity as a result of a build up of friction and tension. We now join with many other jurisdictions in holding that normal conditions of confinement, as a matter of law, will not support a defense of choice of evils pursuant to section 18–1–702, C.R.S.1973. *State v. Alberigo*, 109 Ariz. 294, 508 P.2d 1156 (1973); *Coley v. State*, 135 Ga.App. 810, 219 S.E.2d 35 (1975); *State v. Rentschler*, 444 S.W.2d 453 (Mo.1969); *State v. King*, 372 S.W.2d 857 (Mo.1963); *State v. Battles*, 585 S.W.2d 213 (Mo.App.1979); *People v. Brown*, 68 App.Div.2d 503, 417 N.Y.S.2d 966 (1979); *State v. Cross*, 58 Ohio St.2d 482, 391 N.E.2d 319 (1979); *Commonwealth v. Stanley*, 401 A.2d 1166 (Pa.Super. Ct.1979); *see* 69 A.L.R.3d 678, 689 *et seq.* (1976), and cases cited therein. This is particularly so in this case where appellant made no effort to seek help through established, lawful channels.[4]

---

3. The following exchange between defense counsel and appellant on direct examination forms the basis for the asserted defense:

"Q. Do you feel that you voluntarily left the prison grounds?
A. No.
Q. Why not? Why don't you think you left voluntarily?
A. I was just getting to the point where I felt like I was going to snap, do you know.
Q. What do you mean going to snap?
A. Friction and tension, do you know, it all builds up in a person and if you snap you don't know if you're going to hurt somebody or they are going to hurt you or what is going to happen, do you know."

4. Appellant testified on cross-examination as follows:

"Q. You didn't go to the people and fill out whatever slips or follow whatever process that you needed to do to try to get to talk to a counsellor or to a psychiatrist, did you?
A. It would be a waste of time.

The defense of choice of evils was not available to appellant for the reasons stated above. Consequently, the impropriety of the trial court in admitting the statement by appellant to rebut that asserted defense is not such an error under the facts of this case as would justify reversal of the appellant's conviction. To constitute reversible error, the challenged testimony of the officer must affect the substantial rights of the defendant. Crim.P. 52(a) provides that any error which does not affect the substantial rights of the defendant shall be disregarded. Here, the evidence independent of the defendant's testimony and the challenged statement overwhelmingly established his guilt.

Although it could be argued that failure to disclose the statement impaired the defendant's ability to make an informed choice whether to exercise his constitutional right to testify, we conclude that the error was harmless beyond a reasonable doubt under the guidelines of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1965). The substantial and uncontroverted evidence of guilt here clearly demonstrates that the error was harmless beyond a reasonable doubt.

We therefore conclude that the defendant's substantial rights were not affected by the admission into evidence of the challenged statement, and that no reversible error occurred.

## II.

Appellant next contends that the trial court committed error by refusing to instruct the jury on appellant's theory of defense. This argument is without merit.

■ The defense tendered to the trial court judge the following theory of the case instruction:

> Q. Did you on that day?
> A. It would be a waste of time. No, not on that day nor no other day because it would be a waste of time.
> Q. Not on any other day?
> A. No.
> Q. Did you ever do this?
> A. No.

"A person who is in a situation where it appears that he is in real danger has the right to act upon appearances, even though such appearances may prove to be deceptive."

The law in this state is well settled that a defendant is entitled to an instruction on his theory of the case if it is grounded in the evidence. *People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (1979); *People v. Mackey*, 185 Colo. 24, 521 P.2d 910 (1974); *People v. Travis*, 183 Colo. 255, 516 P.2d 121 (1973); *People v. Montague*, 181 Colo. 143, 508 P.2d 388 (1973); *Allen v. People*, 175 Colo. 113, 485 P.2d 886 (1971). However, this instruction, if it relates to anything in this case, could only relate to the defense of choice of evils, which as a matter of law was not available to appellant. Under those circumstances, the trial court properly refused to give the requested instruction. *See People v. Tenorio, supra; People v. White*, 191 Colo. 353, 553 P.2d 68 (1976); *People v. Truesdale*, 190 Colo. 286, 546 P.2d 494 (1976); *People v. Duran*, 185 Colo. 359, 524 P.2d 296 (1974); *People v. Griego*, 183 Colo. 419, 517 P.2d 460 (1973).

## III.

Appellant's third allegation of error is that the trial court improperly admitted into evidence the minute order of the original sentencing hearing from appellant's 1975 murder conviction to prove that appellant was incarcerated pursuant to a prior conviction at the time of his escape. That minute order contained the statement that "the jury found after further deliberation that the defendant committed the offense in an especially heinous, cruel or depraved manner." Appellant contends that introduction of this minute order unfairly prejudiced the jury. Under the record of this case, we do not agree with this contention.

> Q. But people within the institution do do that, do they not?
> A. If they have got the patience, yes.
> Q. In fact, some people who feel they need help will ask for placement in protective custody?
> A. That's right."

Evidence of a prior conviction is an essential element of the offense of escape. Section 18–8–208, C.R.S.1973 (1978 Repl. Vol. 8); *People v. Austin*, 162 Colo. 10, 424 P.2d 113 (1967); *Schwickrath v. People*, 159 Colo. 390, 411 P.2d 961 (1966); *People v. Rivera*, 37 Colo.App. 4, 542 P.2d 90 (1975). The district attorney introduced the minute order and other materials to establish appellant's previous conviction.

■ Although we agree that introduction of the minute order containing the statement of aggravating factors may have been prejudicial, in our view, its admission into evidence in this case was not reversible error. This court has previously approved the introduction of similar evidence to establish a prior conviction. *See Schwickrath v. People, supra.* In addition, prior to the admission of the minute order, the defense had itself elicited testimony from defense witnesses to the effect that appellant had been confined on death row and in the maximum security unit of the state penitentiary.

To constitute reversible error, introduction of the statement of aggravating factors must affect the substantial rights of a defendant, Crim.P. 52(a). In light of the testimony introduced by the defense, it is our view that the minute order was largely cumulative and therefore had little, if any, effect on the defendant's substantial rights.

### IV.

Appellant next contends that a variance between the crime charged and the crime proved renders the information against him void and requires reversal of his conviction. In our view, the error was harmless.

■ Appellant was charged under subsection (2) of 18–8–208, C.R.S.1973 (1978 Repl. Vol. 8), with the class 3 felony of escape from confinement following conviction of a felony *other than* a class 1 or class 2 felony. However, the proof established that appellant escaped from confinement following conviction of a class 1 felony. Appellant should properly have been charged with a class 2 felony under subsec-

tion (1) of 18–8–208, C.R.S.1973 (1978 Repl. Vol. 8). The proof required under subsection (2) is the same as that required under subsection (1), with the sole exception being the classification of the prior felony. The variance between the information and the proof in this case cannot be said to have misled appellant in making his defense or to have exposed appellant to the danger of being again put in jeopardy for the same offense. *But see Sawyer v. People*, 173 Colo. 351, 478 P.2d 672 (1970); *Skidmore v. People*, 154 Colo. 363, 390 P.2d 944 (1964); *Casadas v. People*, 134 Colo. 244, 304 P.2d 626 (1956). In fact, the error benefited appellant insofar as he was sentenced for a class 3 felony when the proof established that he was guilty of a class 2 felony. Consequently, the error in charging was harmless and does not warrant overturning appellant's conviction.

### V.

■ Finally, appellant challenges the constitutionality of the escape statute, section 18–8–208, C.R.S.1973 (1978 Repl. Vol. 8). Specifically, appellant contends that insofar as the escape statute imposes different punishments on escapees based on the classification of their prior conviction and without regard to the nature of the escape itself, the statute denies equal protection of the law. Because we believe that the classification scheme of the escape statute bears a rational relationship to the legitimate purpose of the statute, we can see no denial of equal protection.

■ Equal protection prohibits a state from enacting a statute which prescribes different punishments for the same acts committed under like circumstances by persons similarly situated. *People v. Dominguez*, 193 Colo. 468, 568 P.2d 54 (1977); *People v. Calvarisi*, 188 Colo. 277, 534 P.2d 316 (1975). However, the law has long recognized a relation between punishment for escape and the offense for which the prisoner was held at the time of the escape, and the courts have approved statutes which provide for increasingly severe punishments for escape by those inmates serving sen-

tences for more grievous crimes. *Pennsylvania v. Ashe*, 302 U.S. 51, 58 S.Ct. 59, 82 L.Ed. 43 (1937).

There is no constitutional requirement that the classification of an escape and its punishment be based solely or even partially on the nature of the escape. *Pennsylvania v. Ashe, supra; Alex v. State*, 484 P.2d 677 (Alaska 1971); *Ex parte Knapp*, 73 Idaho 505, 254 P.2d 411 (Idaho 1953); *see also Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). We believe that there are a number of rational considerations which justify the classification scheme of our escape statute. These considerations include the reasonable belief on the part of the legislature that persons convicted of more grievous crimes present a greater threat to society requiring that a greater effort be made to deter their escape, and that persons convicted of more grievous crimes are generally sentenced to longer prison terms, increasing their motive to escape and requiring greater penalties to help deter such escapes. *Alex v. State, supra; see Pennsylvania v. Ashe, supra; Ex parte Knapp, supra.*

The classifications set forth in section 18-8-208, C.R.S.1973 (1978 Repl. Vol. 8), are not arbitrary or unreasonable but are founded on rational distinctions. The statute does not deny equal protection of the law.

Judgment affirmed.

ERICKSON and QUINN, JJ., dissent.

QUINN, Justice, dissenting:

I respectfully dissent from Parts I and III of the majority opinion.

The record conclusively establishes that the defendant's statement was known to the district attorney prior to the commencement of the trial and that the district attorney breached his duty to disclose it to defense counsel under Crim.P. 16(I)(a)(1)(II). The failure to disclose the statement implicated the defendant's constitutional rights in two respects. First, it eliminated the opportunity for defense counsel to challenge the admissibility of the statement by a pre-trial motion to suppress. Second, it prevented the defendant from making an informed decision on whether to exercise his constitutional right to testify and thereby face cross-examination on the statement, or alternatively to remain silent at trial. Because the exercise of constitutional rights was most probably affected by the prosecution's failure to disclose, the proper inquiry here is not whether the admittedly improper impeachment had a substantial effect on the verdict. Rather, the proper inquiry is whether the prosecution, the beneficiary of the error, has demonstrated beyond a reasonable doubt the harmless character of the error. *E. g., Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Unless the record establishes no reasonable possibility of the improper impeachment having contributed to the conviction, the conviction should be reversed and a new trial ordered. *Chapman v. California, supra; Fahy v. Connecticut, supra.* In my opinion the prosecution's showing of harmless error falls short of the mark.

I believe this error was compounded by the admission into evidence of the minute order of the defendant's prior conviction stating that "the defendant committed the offense in an especially heinous, cruel or depraved manner." A prior conviction of murder was the basis of the defendant's confinement and that conviction was properly admitted. However, the manner in which the crime was committed was totally irrelevant to the charge of escape and, for that matter, to any issue in the case. The natural and probable consequence of the admission was to portray the defendant to the jury as a dangerous and brutal criminal who should be found guilty for that reason alone. Under such circumstances the prejudice to the defendant is evident on the face of the offered evidence and the fairness of the trial proceeding is irreparably compromised. *See People v. Lucero*, Colo., 615 P.2d 660 (1980). Only a new trial can cure the wrong.

I am authorized to say that Justice Erickson joins me in this dissent.