No. 47,178

STATE OF KANSAS, *Appellee,* v. STEPHEN DECATUR MILUM, *Appellant.*

(516 P. 2d 984)

Opinion filed December 8, 1973.

*Tom Boone,* of Leavenworth, argued the cause and was on the brief for the appellant.

*Patrick J. Reardon,* county attorney, argued the cause, and *Vern Miller,* attorney general, *Hall Triplett,* special prosecutor, and *Dennis Dietz,* special prosecutor, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Stephen Decatur Milum was convicted by a jury of escaping from the Kansas state penitentiary and he has appealed. His basic contention is that he was prevented from putting his defense before the jury.

The defense was coercion, or compulsion, as codified by K. S. A. (now 1972) Supp. 21-3209 (1):

"A person is not guilty of a crime other than murder or voluntary man-slaughter by reason of conduct which he performs under the compulsion or threat of the imminent infliction of death or great bodily harm, if he reason-ably believes that death or great bodily harm will be inflicted upon him or upon his spouse, parent, child, brother or sister if he does not perform such conduct."

Insofar as this case is concerned the key statutory phrase is that the threat must be of the "imminent" infliction of death or great bodily harm. The codification thus embodies the common law characteristics of the defense exemplified by the encyclopedists:

". . . In order to constitute a defense, the coercion or duress must be present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. . . . The doctrine of coercion or duress cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm. And threat or fear of future injury is not sufficient." 21 Am. Jur. 2d, *Criminal Law*, § 100.

"The compulsion or coercion which will excuse the commission of a criminal act must be present, imminent, and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done; it must be continuous, and there must be no reasonable opportunity to escape the compulsion without committing the crime. A threat of future injury is not enough, particularly after danger from the threat has passed." 22 C. J. S., *Criminal Law*, § 44.

Appellant's difficulties in presenting his defense first arose prior to his opening statement. The county attorney, having gleaned the tenor of the intended defense from counsel's *voir dire* examination of the jurors, entered a preliminary objection in chambers to "any testimony concerning the defendant's motives for leaving the Kansas State Penitentiary." When defense counsel urged his right to show "grave and immediate threat of life" as a justification, the county attorney responded, "If he's talking about [imminent] threat of the defendant that means evidence there is a man standing beside him with a pistol or a knife going to kill you and forces you to go, it doesn't mean ideas in his mind." The court's response was:

"I can't very well rule in advance as far as admissibility of evidence, but I will state it's my opinion that there isn't any such thing as justifiable escape, so the court will sustain any objection to evidence going to that type of motive. Of course, when he's forced to escape that is something else, but I think the state is correct in its contention what so far as the law is."

With the ground rules thus established, the defense attempted to introduce its evidence. Larry J. Henderson, a penitentiary inmate, was asked whether he had heard anyone threaten the defendant's life. An objection was sustained. Repeated efforts to introduce the same testimony met the same fate, and finally the witness was excused.

At this point, in chambers, the defendant made the following offer of proof:

"MR. BOONE: Larry Henderson would testify that in the presence of Sam Brooks and Steve Milum that Deputy Warden Banker said to Steve Milum, 'You had better run off or I will have you shot.' And this statement was made in June or July of 1970. . . .

. . . . . . . . . . . . . . .

"MR. BOONE: Earl B. Sigler will testify in the presence of Pat Carpenter, Joe Moreno, Louis Albert, Lee Green, Banker told Steve that he best find his way out of this place or he was going to have him taken care of. Albert, Lee Green, in the presence of Steve Milum, Dean Scruggs and Louis Albert witness he said that Deputy Warden Banker said, 'I told you once before I would kill you if you don't get out, you know what will happen if you stay.' Harold Dean Scruggs in the presence of Green, Moreno and Carpenter stated that Deputy Warden Banker stated to Steve, 'I see you're back out of jail, and I told you I would get you killed if you came back, and I will get you killed if you stayed.'"

The court sustained an objection to all the testimony so offered "on the basis of the lack of relevancy." The correctness of this ruling is the main issue for decision.

As may be seen upon careful examination, the testimony sought to be adduced related to as many as four distinct incidents where threats were alleged to have been made by the deputy warden. The first mentioned was "in June or July of 1970." Milum escaped on August 7, 1970. It is apparent that the threats, if such there were, were made on several different occasions and thus could not have met the statutory requirement of imminence. At best the threats were aimed at some indefinite time in the future.

This case is nearly on all fours with *People v. Richards*, 269 Cal. App. 2d 768, 75 Cal. Rptr. 597. Richards claimed he had escaped because he expected to be killed at any time. He had committed that most heinous crime among prison inmates, that of reporting to prison authorities homosexual assaults by other inmates. As a result he was a marked man, and that fact had been communicated to him by his fellow inmates. Yet in his trial for escape the trial court excluded his proferred evidence concerning his reasons for escaping and refused to instruct the jury on the defense of compulsion. On appeal both rulings were upheld, the court saying (269 Cal. App. 2d at 778, 75 Cal. Rptr. at 604):

"The compulsion from the harm or evil which the actor seeks to avoid, should be present and impending, as in the case of the threat or menace contemplated by the Penal Code. This is not a case where the prisoner departed from the limits of his custody while pursued by those who would take his life because he 'snitched,' or by those who sought by force and violence

to have him submit to sodomy. Moreover, any and all alternative courses should be considered, and it must be determined that the threatened consequences could not otherwise be avoided."

To the same effect, see *State v. Green*, 470 S. W. 2d 565 (Mo., 1971); *People v. Noble*, 18 Mich. App. 300, 170 N. W. 2d 916.

So here, Milum's evidence in its most favorable light would have shown no immediate threat; since it would not establish the supposed defense it was not error to exclude it. Cf., *State v. Lesco*, 194 Kan. 555, 400 P. 2d 695, Syl. ¶ 4, cert. den. 382 U. S. 1015, 15 L. Ed. 2d 529, 86 S. Ct. 628. By the same token, it was not error to refuse to instruct on the defense, since there was no evidence to justify such an instruction.

Appellant raises one additional question, and that is the delay in ruling on his motion for a new trial and imposing sentence. The verdict was returned on June 25, 1971; his motion for a new trial was filed July 1, 1971; argument was heard on September 15, 1971; the motion was overruled and sentence was imposed on July 7, 1972. Appellant points to K. S. A. (1972) Supp. 22-3501 (2), requiring such a motion to be heard and determined within 45 days of the date it is made.

The record is unclear as to the cause of the year's delay. Colloquy between court and counsel indicates there may have been at least one motion for a continuance by the appellant, and further delays which may have been occasioned by both the absence and the illness of defense counsel. While we cannot condone unwarranted delay, under the circumstances of this case appellant can demonstrate no prejudice. The sentence imposed was to run consecutively to that which the appellant was then serving, so we are not confronted with any question of lost time or of credit for the time served between conviction and sentence. In any event the delay did not deprive the court of jurisdiction to impose sentence.

Since no prejudicial error appears, the judgment is affirmed.

APPROVED BY THE COURT.