ALBERT WALKER *v.* STATE OF INDIANA.

[No. 877S584. Filed October 10, 1978.]

*Kenneth M. Stroud, Bruce N. Bagni,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *David Michael Wallman,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of Kidnapping, Ind. Code § 35-1-55-1 (Burns 1975), following a bench trial and was sentenced to life imprisonment.

Defendant was an inmate in the Indiana State Prison at Michigan City, Indiana. As of October 10, 1975, the defendant had been imprisoned in a modified solitary confinement (NSB) unit for more than six months. On the night of October 10th, Defendant and five other inmates escaped from their cells. After winning their way to the prison yard, the es-

capees faced recapture by the prison guards and the State Police. They then entered the warden's house, which was located upon the prison grounds, and kidnapped the warden, his wife and their eleven year old daughter. They forced the warden and his family into the warden's station wagon with which they crashed the prison gate, amid considerable gunfire from the police. They were chased several blocks until they wrecked the vehicle, whereupon the defendant was recaptured and the hostages rescued unharmed.

At trial, Defendant relied exclusively upon a defense of *Necessity*.

The defense of necessity has been recognized in a few instances in the United States as well as in England. See *Hitchler*, Necessity as a Defense in Criminal Cases 33 Dick. L. Rev. 138 (1929) and *Arnolds & Garland*, The Defense of Necessity in Criminal Law.

A landmark case in America recognizing the existence of the Necessity Defense is *United States* v. *Holmes*, 26 F. Cas. 360 (N. 15, 383) (C.C.E.D.Pa. 1842). This was the classic "lifeboat" case. The survivors of a shipwreck were crowded into a leaking lifeboat and the crew determined that some passengers would have to be thrown overboard or all would perish. The defendant, a crew member, was convicted of manslaughter for helping throw several passengers overboard. Although the defendant was convicted the court did accept the principle that committing a harm, even the taking of human life, could sometimes be justified because it avoided an even greater harm, i.e. the loss of even more lives. The court did not approve of Holmes' behavior because the choice of which persons had to die was not fair. The court suggested that generally choice by lots would be fair as between equals but that the ship's crew owed a duty to the passengers that required the crew members, over and above those required to man the lifeboat, to sacrifice themselves before the passengers.

The defense has also been provided for by the American Law Institute, Model Criminal Code.

Although the dcctrine was recognized as a defense in a tort action, *Conwell* v. *Emrie,* (1850) 2 Ind. 35, we have never had occasion to wrestle with its obvious complexities; and this case does not require that we do so.

With the exception hereinafter noted, we categorically reject that one under restraint of judicial decree or lawful arrest may justify an act of violence against another person, upon the premise that it was necessary to avoid harm he himself was suffering, or would suffer, in direct or incidental consequence of such restraint. The lone exception to this would be if such violence was reasonably necessary in lawful defense and directed against the person then creating the need.

Defendant argues at trial that the intolerable living conditions imposed by prolonged solitary confinement in the NSB unit would have inevitably resulted in severe psychological and spiritual damage to himself. There was no evidence that Defendant planned the escape or even knew of it in advance, but he took the opportunity to depart when someone opened his cell door. He relied upon this as the justification for the escape from his cell. Although Defendant does not argue the point directly, he assumes that the asserted justification for the initial escape would also serve as a justification for the subsequent kidnapping.

Although a few cases have applied the necessity defense to the prison escape, *People* v. *Lovercamp,* (1974) 43 Cal. App. 3d 823, 118 Cal. Rptr. 110 (escape from homosexual assault) ; *People* v. *Unger,* (1977) Ill., 362 N.E.2d 319 (escape from homosexual assault) ; *State* v. *Palmer,* (1950) 45 Del. 308, 72 A.2d 442 (escape from prison fire), it is often decided that the defendant has a duty to surrender himself as soon as the immediate harm is avoided. *People* v. *Webster,* (1965) 237 Cal. App. 2d 232, 46 Cal. Rptr. 699 ; *People* v. *Lovercamp, supra; State* v. *Palmer, supra.*

The kidnapping is good evidence that Defendant did not intend to surrender himself following the escape. Furthermore, among the jurisdictions to have considered the question, the unsanitary, unhealthful, or inhuman conditions of confinement have been rejected by the majority as a justification for escape. *See Dempsey* v. *United States,* (5th Cir. 1960) 283 F.2d 934; *People* v. *Whipple,* (1929) 100 Cal. App. 261, 279 P. 1008; *State* v. *Palmer,* (1950) 45 Del. 308, 72 A. 2d 442; *Syck* v. *State,* (1973) 130 Ga. App. 50, 202 S.E.2d 464; *State* v. *Cahill,* (1923) 196 Iowa 486, 194 N.W. 191; *State* v. *Davis,* (1880) 14 Nev. 439; *State* v. *Alberigo,* (1973) 109 Ariz. 294, 508 P. 2d 1156; *State* v. *Hayes,* (1958) 52 N.J. Super. 178, 145 A.2d 28; *State* v. *King,* (1963) Mo., 372 S.W. 2d 857; *Johnson* v. *State,* (1905) 122 Ga. 172, 50 S.E. 65; Annotation, 69 A.L.R.3d 678.

Since the degrading circumstances of an inmate's confinement are generally rejected as a justification for prison escape, we do not hesitate to reject them as a justication for the much more serious offense of kidnapping.

Defendant sought to present issues concerning the technical requirements of the defense, the burden of proof under such defense and, upon the assumption that his position upon those issues would be upheld, the sufficiency of the evidence. Under our holding above, it is not required that we meet those questions.

Defendant also argues that the mandatory sentence of life imprisonment for kidnapping is Cruel and Unusual Punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and in violation of Article I, § 16 of the Indiana Constitution.

Defendant recognizes this Court's prior holdings upon this same issue, which are contrary to his position. *See Parker* v. *State,* (1976) 265 Ind. 595, 358 N.E.2d 110; *Vacendak* v. *State,* (1976) 264 Ind. 101, 340 N.E.2d 352; *Beard* v. *State,*

(1975) 262 Ind. 643, 323 N.E.2d 216. Although he argues that a life sentence has the same "unique nature" as does a death sentence, the United States Supreme Court stated:

*"Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two."* (Emphasis added) *Woodson v. North Carolina,* (1976) 96 S.Ct. 2978, 2991-2992, 49 L.Ed.2d 944, 961.

We find no error. The judgment of the trial court is affirmed.

Givan, C.J. and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 381 N.E.2d 88.