STATE OF NEBRASKA, APPELLEE, V. RONALD L. REED, APPELLANT.

286 N. W. 2d 111

Filed December 11, 1979. No. 42630.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos, for appellant.

Paul L. Douglas, Attorney General, and Linda A. Akers, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, J.

The defendant, Ronald Reed, was charged with the offense of escape and convicted after trial to the court. The defendant appeals. We affirm.

An understanding of the facts is necessary to a discussion of the issues raised in the appeal. The defendant was serving a sentence of 10 to 25 years in the Nebraska Penal and Correctional Complex for the offense of entering a bank with unlawful intent and shooting with intent to kill, wound, or maim. The approximate earliest date defendant was eligible for release was December 30, 1985. While incarcerated, the defendant became embroiled in a conflict with a guard, John Hawkins, and the prison administration. Hawkins allegedly engaged in homosexual relations with a prisoner, Robert Brooks, and as a consequence was removed from his regular duty at the prison. Brooks had informed the prison officials of this relationship and further implicated Hawkins by alleging the guard smuggled drugs into the prison for him. Hawkins asked Reed to talk to Brooks to ascertain the information Brooks was conveying. Defendant stated that Brooks denied having a sexual relationship with the guard but said that his desire to be released from the institution at an earlier date prompted his statements against the guard. The defendant then contacted John Meyers, the president of the guard union, and told him he had information that would exonerate Hawkins. Deputy Warden Watson, hereafter Watson, became aware of the defendant's role. Reed informed Watson that Brooks had fabricated his story about Hawkins but that Brooks said he had a homosexual relationship with Watson.

On August 25, 1976, Reed was granted an extension of the limits of his confinement to allow him to participate in the educational release program. Defendant asserted this release was a result of an agreement with Watson. According to the defend-

ant, Watson agreed that Brooks would receive an early parole and the defendant would be placed on the educational release program if the defendant would assure Watson that Brooks would not testify as to any relations between Brooks and Watson. After approximately 2 months on the educational release program, the defendant informed Watson that he would no longer take responsibility for Brooks. Allegedly this news angered Watson. The defendant testified that during a telephone conversation on October 26, 1976, between 6 and 7 p.m., Watson threatened to "eliminate" the defendant. Reed was scheduled to be at the Selleck Quadrangle Building Learning Center from 6 to 8 p.m., that evening. Officer Zierke, the on-duty supervisor at the Lincoln work release center, went to the university to check the defendant's class schedule and could not locate the defendant anywhere on campus. The defendant claims he returned to his assigned tutoring session after the telephone conversation with Watson and was informed by a university employee that some guards were looking for him. The defendant called the work release center and spoke with Officer Zierke. Zierke told Reed to return to the center that evening at approximately 9:50 p.m. The defendant did not return.

The defendant fled, traveling first to Omaha, then to Denver, and finally to Los Angeles where he was apprehended on February 3, 1977. The defendant did not voluntarily surrender himself to the authorities. After arrest in California, the defendant requested to be placed in another penal institution if he was brought back to Nebraska. This request was denied. He made the same request of Judge Cheuvront in Nebraska, which was denied. Reed was subsequently extradited to Nebraska on August 17, 1977, and held in the county-city jail in Lincoln pending trial on the charge of escape.

The defendant waived his right to trial by jury and stipulated the case should be submitted on certain

exhibits. The defendant does not contend the waiver was not voluntarily and intelligently given. The defendant testified the waiver was part of a plea bargain whereby he would waive his right to a jury trial if Watson would submit to a polygraph examination. The defendant took a polygraph examination on November 22, 1978, and Watson submitted to a polygraph examination on December 10, 1978. Part of the agreement included that both parties would be asked essentially the same questions, including the question of whether Watson and the defendant had discussed the Hawkins-Brooks affair. Defendant protested that the examiner's questions to Watson were asked in a significantly different form and asked leave to withdraw his waiver of a jury trial. This request was granted. Following this motion, the State requested permission to file an amended information alleging defendant to be an habitual criminal. The court granted permission to amend. The defendant again waived a jury trial. The court found the defendant guilty.

The defendant assigns three errors: The evidence did not show beyond a reasonable doubt that the defendant committed the act because the defense of duress, necessity, or choice of lesser evils was applicable; the defendant was twice put in jeopardy; and the court erred in permitting the State to file an amended information charging defendant with being an habitual criminal. While we agree that the trial court could find that the duress or necessity by threat defense was shown not to exist beyond a reasonable doubt, we shall discuss the extent that such defenses exist in Nebraska.

There are no cases in this state dealing specifically with duress or necessity as a defense to the charge of escape. However, this court has discussed the defense of justification for violent assault. In State v. Graham, 201 Neb. 659, 271 N. W. 2d 456 (1978), the defendant testified that as a result of assaults upon

him while in prison and fear for his life, he attempted escape by assaulting a prison nurse. The trial court refused to instruct on the defense of justification. This court affirmed the trial court, quoting from State v. Schroeder, 199 Neb. 822, 261 N. W. 2d 759, in interpreting section 28-836, R. R. S. 1943: " 'The present statutory requirement is that the actor believe such force is immediately necessary to protect himself against the use of unlawful force by the other person on the present occasion.' " The court explicitly specified an immediacy requirement. "* * * for the choice of evils justification * * * to be available as a defense, it must first be shown that the defendant's conduct was necessitated by specific and imminent threat of injury to his person under circumstances which left him no reasonable and viable alternative other than the violation of the law for which he stands charged." The concurrence by Clinton, J., suggests the defense was not applicable to an assault on an innocent person. State v. Graham, *supra*, does not support defendant's proposition that the defense of necessity or duress should be available in escape cases. Graham concerned the use of violent force against a prison nurse to justify an unlawful act. The court did not, nor does it now, decide the availability of the duress or necessity defense in a prison escape.

The general rule is that a prisoner's alleged fear of violence at the hands of a prison guard or officials does not justify an escape. In State v. Alberigo, 109 Ariz. 294, 508 P. 2d 1156 (1973), the prisoner's fear that numerous police officers would retaliate for his striking a police officer at the time of his arrest did not excuse an escape. See, also, Matthews v. State, 288 So. 2d 712 (Miss., 1974), where fear of death threats by a prison guard was not a defense to the charge of escape. See, generally, Annotation, Duress, Necessity, or Conditions of Confinement as Justification for Escape from Prison, 69 A. L. R. 3d

678. In State v. Milum, 213 Kan. 581, 516 P. 2d 984 (1973), in discussing the defense, the court pointed out the death threats made against the prisoner by the deputy warden were aimed at some indefinite time in the future. The defense was not allowed because the threats were not sufficiently "imminent."

Closely related to a prisoner's fear of violence at the hands of prison officials is the fear of impending death or serious bodily injury at the hands of other prisoners. However, the immediacy requirement is still necessary. A leading case is State v. Green, 470 S. W. 2d 565 (Mo., 1971). An escapee was told during the noon hour by a group of four or five inmates that they would be at his cell that night and unless he submitted to their homosexual advances, they would kill him. The court held that since defendant had several hours in which he could have reported threats and names of those making threats to authorities in charge of the center, the defense of necessity was not available and the court did not err in refusing his offer of proof. Quoting from State v. St. Clair, 262 S. W. 2d 25 (Mo., 1953), the court said: "[T]o constitute a defense to a criminal charge, the coercion must be present, imminent, and impending and of such a nature as to induce a well grounded apprehension of death or serious bodily injury if the act is not done. Threat of future injury is not enough."

This court does not reject the possibility that the defense of necessity or duress may be available in some circumstances. Even if this court adopts the defense, we would still reject the defense in Reed's case because he does not meet the preconditions for the defense. Until 1974, when People v. Lovercamp, 43 Cal. App. 3d 823, 118 Cal. Rptr. 110, was decided, no court had reversed a conviction for the crime of escape because of threats of death or great bodily harm. The California Court of Appeals for the Fourth District became the first appellate court to

hold that a prison escape induced by threatened, imminent homosexual assault by other inmates may be justified as a matter of necessity so long as the inmate does not resort to violence in the escape and reports to proper authorities when he has attained a position of safety from the immediate threat. The Lovercamp court set out the standards required for the defense. First, the prisoner must be faced with a specific threat of death or substantial bodily injury in the immediate future. Second, there must be no time for a complaint to the authorities or there must exist a history of futile complaints. Third, there must be no opportunity to resort to the courts. Fourth, there must be no evidence of force or violence used toward prison personnel or other innocent persons in the escape. The final condition requires that the prisoner must report immediately to the proper authorities when he attains a position of safety from immediate threat. Clearly, under the Lovercamp criteria, Reed would not be entitled to the defense of necessity since at least four and possibly five of the Lovercamp criteria have not been met.

The defendant raises two other issues. The defendant claims he was subjected to double jeopardy by the commencement of a second trial against him. By reviewing the procedural events in the instant case, it is evident that defendant's double jeopardy claim is without merit. The defendant voluntarily waived his right to a jury trial. Reed then withdrew his waiver of a jury because he was dissatisfied with the way the polygraph examinations were conducted. The court granted defendant's motion and the defendant's case was reset for trial before the next convened jury panel. Subsequently, the defendant again waived a jury and agreed to a trial by stipulation. To analyze defendant's claim of double jeopardy, it must be noted that the first trial was terminated by a motion made by the defendant. The

United States Supreme Court has said: "* * * motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, * * *." United States v. Jorn, 400 U. S. 470, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971). According to that decision, the defendant would have to show prosecutorial or judicial overreaching to come outside the general rule that termination of trial granted on the defendant's own motion removes any double jeopardy violations. The defendant is unable to point to anything in the record to justify the claim of judicial or prosecutorial overreaching or bad faith. The double jeopardy claim is without merit.

Finally, the defendant claims the court erred in permitting the county attorney to file an amended information charging defendant with being an habitual criminal. The defendant contends the only reason for the requested amendment was vindictiveness. This claim is without merit. This court has said: "The district court in its discretion may before trial permit the county attorney to amend a criminal information, provided the amendment does not change the nature or identity of the offense charged, and the information as amended does not charge a crime other than the one on which the accused had his preliminary examination." Losieau v. State, 157 Neb. 115, 58 N. W. 2d 824 (1953). In the same case, citing Jones v. State, 147 Neb. 219, 22 N. W. 2d 710 (1946), this court said: "The charge that one is an habitual criminal is not the charge of a distinct offense or crime." Without an affirmative showing of prosecutorial vindictiveness, which has not been made, the defendant's claim is without merit.

Finding no error, we affirm.

AFFIRMED.