(811 P.2d 517)

No. 65,121

STATE OF KANSAS, *Appellee*, v. DOUGLAS K. PICHON, *Appellant*.

Opinion filed May 10, 1991.

*Rick Kittel*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Frank E. Kohl*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before DAVIS, P.J., REES and BRAZIL, JJ.

BRAZIL, J.: Douglas Pichon appeals his conviction on one count of aggravated escape from custody. K.S.A. 21-3810. Pichon contends the district court abused its discretion when it refused to allow him to call certain witnesses who he contends were necessary to prove his defense of compulsion. Pichon also contends there was insufficient evidence to show he was guilty of the crime charged. We affirm.

Pichon, a convicted felon, was serving his sentence at the Kansas Correctional Institution at Lansing (KCIL) at the time of the incident in question. Pichon and a group of other inmates were transported to the Leavenworth Community Center to participate in a men's city league volleyball game. Pichon testified that, when the van arrived at the community center, he was the last person to get out. Just as he was getting ready to go into the building, he heard someone yell, "Hey, Winfrey." Pichon testified that, although he was charged under the name of Douglas Pichon, Pichon is an assumed name, and his real name is William Winfrey. A court services officer verified that, at birth, the defendant's name was William Daniel Winfrey, Jr.; although the defendant began using the name of Douglas Pichon in 1985, his name has never been legally changed.

Pichon testified that, when he looked around, he saw a person he recognized as Tony DeWitt accompanied by another man. When Pichon saw DeWitt, he ran away because he believed DeWitt was there to hurt him. Pichon testified that DeWitt did not say anything else to him, and there was no testimony of any menacing or threatening behavior toward him by DeWitt before he ran away. When he started to run, Pichon said he heard the man with DeWitt say, "Hey, Tony, get in the car and we will get him," and DeWitt did chase Pichon. Pichon testified that he ran about two blocks and then ducked into an alley and hid in a dumpster for a couple of hours.

Based upon a tip from an informant, Pichon was apprehended in Kansas City, Kansas, the following day by agents of the Kansas Bureau of Investigation. When these agents first accosted Pichon, he did not admit he was an escapee but instead told them a story about being from Oregon. At trial, Pichon admitted that, once he had escaped the immediate threat, he did not try to return himself to the authorities, and that his intent was to stay out of custody as long as possible.

Pichon raised the defense of compulsion. He testified at length concerning his belief that, if he had not run away, he risked death or great bodily harm at the hands of DeWitt. Pichon testified that DeWitt had been his partner in an aggravated robbery in Wichita in 1985 and that he had testified against DeWitt at trial. Pichon stated that, in November 1986, he had received two

notes signed "San Diego," DeWitt's street name. His testimony did not indicate whether these notes involved some threat. One week after the second note, Pichon said his cell was "firebombed," and Pichon apparently believed DeWitt was responsible for this. After this incident, Pichon was transferred to protective custody for 14 months. During this time, Pichon talked with his brother on the phone, and his brother told him that DeWitt "hasn't forgotten about" him.

Pichon stated that, when he left protective custody, he was transferred to a medium security facility at the Kansas State Penitentiary (KSP) where an inmate, Bobby Berks, threatened him. Pichon says that, although Berks never said so, there was an "insinuation" that he had been paid by DeWitt to threaten him. Pichon reported the incident and was then transferred to an outside dormitory. He said Berks was there also, and Berks again threatened him, this time with a screwdriver. Pichon voluntarily checked into protective custody again, and shortly thereafter he was sent to KCIL. These last episodes with Berks apparently occurred over two months before Pichon's escape.

After giving his own testimony at trial, Pichon sought to call four witnesses who he said would corroborate his testimony concerning the reasonableness of his fear of imminent harm by DeWitt at the community center. The State argued such testimony was irrelevant, its objection was sustained by the court, and the four proposed witnesses were not allowed to testify.

As his first issue, Pichon argues that his rights under the Sixth and Fourteenth Amendments to the United States Constitution and under section 10 of the Kansas Bill of Rights, to have compulsory process of witnesses and to present a complete defense, were violated by the trial court's decision to exclude the testimony of his four proposed witnesses.

Under the due process clause of the Fourteenth Amendment, criminal defendants must be afforded a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984). The Sixth and Fourteenth Amendments also guarantee the right of an accused to have compulsory process for obtaining witnesses in his favor and the right to present his own witnesses to establish a defense. *Washington v. Texas*, 388 U.S. 14, 18-19, 18 L. Ed.

2d 1019, 87 S. Ct. 1920 (1967). While these rights protect the accused from the State's arbitrary denial of his right to put witnesses on the stand to testify in his behalf, they do not prevent the exclusion of testimony that is irrelevant or immaterial. See 388 U.S. at 23.

Pichon sought to introduce the testimony of four proposed witnesses and proffered that he believed their testimony would be relevant on the following matters: (1) a department of corrections officer in charge of internal investigations, to be questioned concerning the firebombing of Pichon's cell, the notes which Pichon received and turned in prior to the firebombing, the contents of an affidavit Pichon filed against Bobby Berks, and Pichon's state of mind concerning these events during incarceration; (2) a KSP inmate, as an expert witness concerning the availability of weapons and vulnerability to attack in prison; (3) a department of corrections unit team counselor, to verify that Pichon had been in protective custody and to testify concerning lack of safety of inmates even while in protective custody; and (4) Pichon's cellmate while in protective custody, to verify that Pichon had expressed fear of DeWitt and that someone might try to kill him. Pichon indicates that the relevance of this testimony was to bolster his compulsion defense.

The defense of compulsion is set forth at K.S.A. 21-3209. That statute states:

"(1) A person is not guilty of a crime other than murder or voluntary manslaughter by reason of conduct which he performs under the compulsion or threat of the imminent infliction of death or great bodily harm, if he reasonably believes that death or great bodily harm will be inflicted upon him or upon his spouse, parent, child, brother or sister if he does not perform such conduct.

"(2) The defense provided by this section is not available to one who willfully or wantonly places himself in a situation in which it is probable that he will be subjected to compulsion or threat."

Our Supreme Court has further stated:

"In order to constitute the defense of compulsion, the coercion or duress must be present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The doctrine of coercion or duress cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm. [Citation omit-

ted.] In addition, the compulsion must be continuous and there must be no reasonable opportunity to escape the compulsion without committing the crime." *State v. Dunn,* 243 Kan. 414, 421, 758 P.2d 718 (1988).

The State, in objecting to admission of the proposed testimony, argued that it was irrelevant and too remote to the issue of compulsion. The State reasoned that the defense of compulsion required a showing of some imminent or present threat, and that events occurring months and years before could not bear on any immediate threat that could have justified Pichon's escape from custody.

Pichon argues the statute sets up a subjective standard of reasonableness of belief: what the defendant "reasonably believes" to be a threat of death or great bodily harm. Therefore, Pichon says, the testimony was relevant to show why, despite the fact DeWitt made no menacing statements or gestures, Pichon nevertheless had reason to fear for his life. Pichon argues that corroboration of his own testimony was necessary because of his status as a prison inmate.

The trial court sustained the State's objections, expressly relying on the authority of *State v. Milum,* 213 Kan. 581, 516 P.2d 984 (1973). In *Milum,* the defendant sought to support his compulsion defense to a charge of escape from custody by introducing testimony concerning four alleged threats to his life while in prison. These threats had been made on various occasions prior to the defendant's escape from custody, some up to two months before. The defendant claimed he had escaped because he expected to be killed at any time. The trial court excluded the evidence and refused to instruct the jury on compulsion, finding that "the threats, if such there were, were made on several different occasions and thus could not have met the statutory requirement of imminence. At best the threats were aimed at some indefinite time in the future." 213 Kan. at 583.

Admission or exclusion of evidence is within the sound discretion of the trial court, subject to exclusionary rules. *State v. Carmichael,* 240 Kan. 149, 157, 727 P.2d 918 (1986). Relevant evidence is evidence having any tendency in reason to prove any material fact. K.S.A. 60-401(b). All relevant evidence is admissible unless excluded by statute. *State v. Holt,* 228 Kan. 16, 23, 612 P.2d 570 (1980). The determination of relevance is a matter of

logic and experience, not a matter of law. *State v. Nemechek,* 223 Kan. 766, 769, 576 P.2d 682 (1978).

Evidence is rejected for remoteness " '[w]hen the fact or facts proposed to be established as a foundation from which indirect evidence may be drawn, by way of inference, have not a visible, plain, or necessary connection with the proposition eventually to be proved.' " *State v. Griffin,* 246 Kan. 320, 325, 787 P.2d 701 (1990). "The question of whether evidence is too remote to be relevant is left to the discretion of the trial judge, whose decision will not be disturbed unless a clear abuse of discretion has been demonstrated." 246 Kan. at 326.

Pichon argues that *Milum* should be distinguished because, unlike the defendant in *Milum,* Pichon was not seeking to use prior threats of future harm as the sole source of his compulsion. Instead, he offered evidence of those prior events to show the reasonableness of his belief that the presence of DeWitt at the community center presented an imminent threat of death or great bodily harm at the time of his escape. We agree with Pichon that this case can be distinguished from *Milum,* and that at least some of the testimony he offered would be relevant if he was entitled to the compulsion defense.

However, we conclude that Pichon is not entitled to a compulsion defense. Although we have been unable to find any reported cases in Kansas involving this particular question, many jurisdictions apply a test which restricts the compulsion defense in cases of prison escape. *Wells v. State,* 687 P.2d 346 (Alaska App. 1984). The test which is usually applied is derived from *People v. Lovercamp,* 43 Cal. App. 3d 823, 831-32, 118 Cal. Rptr. 110 (1974), and holds that the defense is available in escape cases only when the following conditions all exist:

"(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

"(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which makes any result from such complaints illusory;

"(3) There is no time or opportunity to resort to the courts;

"(4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and

"(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat."

This test, although said to embody the common law, is applied even in states which, like Kansas, have codified their compulsion defense. See *Com. v. Stanley*, 498 Pa. 326, 446 A. 2d 583 (1982).

Neither party cited *Lovercamp* in its brief nor was prepared to address it at oral argument. Consequently, the parties were given an opportunity to submit supplemental briefs. We have received and reviewed Pichon's brief. The State did not file one.

In his supplemental brief, Pichon cites a Michigan case, *People v. Luther*, 394 Mich. 619, 232 N.W.2d 184 (1975), wherein the Michigan Supreme Court refused to follow *Lovercamp*. In *Lovercamp*, California held that the defense of necessity (for all purposes essentially similar to our statutory defense of compulsion) was not available unless five specified conditions were first met. The fifth of those conditions was that "[t]he prisoner immediately reports to the proper authorities when he has obtained a position of safety from the immediate threat." 43 Cal. App. 3d at 832. Michigan, in *People v. Luther*, 394 Mich. at 623-24, treats the *Lovercamp* conditions as relevant for jury consideration as to the weight and credibility of a defendant's claim that he escaped out of necessity, but not as essential conditions that must be satisfied in order to assert the defense.

As the Michigan case indicates, there is a split of authorities concerning application of the *Lovercamp* conditions. Two states agree with the Michigan position. See *Commonwealth v. O'Malley*, 14 Mass. App. 314, 319-21, 439 N.E.2d 832 (1982); *Esquibel v. State*, 91 N.M. 498, 501, 576 P.2d 1129 (1978).

The great majority of states, however, follow *Lovercamp* in requiring a defendant to show the five (or four in some states) *Lovercamp* conditions have been met before the defense of necessity (compulsion, coercion, or duress) is available in escape from custody cases. See *United States v. Bailey*, 444 U.S. 394, 412-13, 62 L. Ed. 2d 575, 100 S. Ct. 624 (1980); *United States v. Boomer*, 571 F.2d 543, 545 (10th Cir. 1978); *Mayes v. State*, 453 So. 2d 767, 769 (Ala. App. 1984); *Wells v. State*, 687 P.2d at 350; *People v. McKnight*, 626 P.2d 678, 681 (Colo. 1981); *Johnson v. State*, 379 A.2d 1129, 1131-32 (Del. 1977); *Stewart v. United States*, 370 A.2d 1374, 1377 (D.C. 1977); *Holdren v. State*, 415 So. 2d 39, 41 (Fla. Dist. App. 1982); *State v. Horn*,

58 Hawaii 252, 256, 566 P.2d 1378 (1977); *State v. Mills*, 117 Idaho 534, 537, 789 P.2d 530 (1990); *People v. Scott*, 194 Ill. App. 3d 634, 551 N.E.2d 288, 291-92 (1990); *Walker v. State*, 269 Ind. 346, 348, 381 N.E.2d 88 (1978); *State v. Reese*, 272 N.W.2d 863, 867 (Iowa 1978); *State v. Boleyn*, 328 So. 2d 95, 97 (La. 1976); *Craddock v. State*, 47 Md. App. 513, 515, 424 A.2d 168 (1981); *State v. Kirkland*, 684 S.W.2d 402, 405 (Mo. App. 1984); *State v. Strandberg*, 223 Mont. 132, 135, 724 P.2d 710 (1986); *State v. Reed*, 205 Neb. 45, 51, 286 N.W.2d 111 (1979); *Jorgensen v. State*, 100 Nev. 541, 544, 688 P.2d 308 (1984); *State v. Saxon*, 226 N.J. Super. 653, 657, 545 A.2d 255 (1988); *State v. Watts*, 60 N.C. App. 191, 193-94, 298 S.E.2d 436 (1982); *State v. Cross*, 58 Ohio St. 2d 482, 488, 391 N.E.2d 319 (1979); *Nichols v. State*, 564 P.2d 667, 669 (Okla. Crim. 1977); *Com. v. Stanley*, 498 Pa. 326, 339, 446 A.2d 583 (1982); *State v. Henderson*, 298 S.C. 331, 333, 380 S.E.2d 817 (1989); *Thiel v. State*, 676 S.W.2d 593, 595 (Tex. Crim. 1984); *State v. Tuttle*, 730 P.2d 630, 635 (Utah 1986); *State v. Niemczyk*, 31 Wash. App. 803, 807-08, 644 P.2d 759 (1982). See generally Annot., 69 A.L.R.3d 678, 688-89.

Pichon argues that the defense of compulsion, as set forth in K.S.A. 21-3209, does not expressly require that the defendant immediately surrender when danger is past in order to be entitled to assert the defense. He contends that the strict rules of construction of criminal statutes thus preclude application of this condition. Aside from the fact that K.S.A. 21-3209 is not limited to prison escapes, we note that in a number of states, including Montana, Pennsylvania, Texas, and Utah, such a condition has been required, although the equivalent statutory defenses in those states also do not expressly impose such a requirement.

The Utah Supreme Court stated its position:

"We find that the importation of this common law requirement into the statute also was proper and consistent with the statute's purpose. The law recognizes that a defendant faced with a serious threat of bodily harm who has no alternative but escape should not, in all fairness, be convicted of a crime for that action. However, while a defendant may be forced to escape a specific threat, the defense does not give an escaped convict a license to remain indefinitely at large. The compulsion defense is certainly not a grant of amnesty. Once the coercion justifying the escape disappears, there is no

policy reason to justify the convict in remaining at large." *State v. Tuttle*, 730 P.2d at 635.

Following the majority of jurisdictions, we adopt the rule from *Lovercamp* with one modification to make test number one consistent with the language of K.S.A. 21-3209 as follows: "The prisoner is faced with a threat of imminent infliction of death or great bodily harm."

In the present case, Pichon cannot meet the fifth part of this test. He admits that he neither tried nor intended to try to turn himself in to the proper authorities once the immediate threat he alleges had passed. Therefore, the compulsion defense would not, as a matter of law, have been available to him.

Furthermore, Pichon himself admitted he could have gone into the community center rather than trying to escape. The defense would not be available because Pichon had a reasonable opportunity to escape the compulsion without committing the crime, and so the proposed testimony would have been irrelevant. See *State v. Dunn*, 243 Kan. at 421. "[T]he judgment of a trial court, if correct, should be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision." 243 Kan. at 430.

As his second issue, Pichon contends the evidence was not sufficient to prove the crime of aggravated escape from custody. K.S.A. 21-3810.

"When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Graham*, 247 Kan. 388, 398, 799 P.2d 1003 (1990).

Pichon notes that the information charged he had escaped from the custody of the "Kansas Correctional Institution, Lansing, Kansas." He further notes that the relevant jury instruction defined custody as "detention in a facility for holding persons charged with or convicted of crimes." Pichon argues that the evidence at trial showed only that he departed from the Leavenworth Community Center. Pichon contends that he was not, therefore, in custody as alleged in the information or defined in the jury instruction. The issue then is whether Pichon was still in the cus-

tody of KCIL, although beyond the confines of the facility, while on an authorized excursion to play volleyball.

Pichon does not expressly challenge the legal sufficiency of the charging instrument or the jury instruction.

The crime of aggravated escape from custody is defined in K.S.A. 21-3810. That statute, in relevant part, states: "Aggravated escape from custody is: (a) Escaping while held in lawful custody upon a charge or conviction of felony." Although K.S.A. 21-3810 does not define "custody," K.S.A. 21-3809, the statute defining the misdemeanor crime escape from custody, was amended in 1982 to add such a definition. K.S.A. 21-3809(b)(1) states:

" 'Custody' means arrest; detention in a facility for holding persons charged with or convicted of crimes; detention for extradition or deportation; detention in a hospital or other facility pursuant to court order, imposed as a specific condition of probation or parole or imposed as a specific condition of assignment to a community correctional services program; or any other detention for law enforcement purposes. 'Custody' does not include general supervision of a person on probation or parole or constraint incidental to release on bail."

In *State v. Pritchett*, 222 Kan. 719, 720, 567 P.2d 886 (1977), decided before there was a relevant statutory definition of custody for the purposes of K.S.A. 21-3810, the court stated:

"[C]ustody contemplates an intent on the part of prison officials to exercise actual or constructive control of the prisoner and that in some manner the prisoner's liberty is restrained. [Citation omitted.] There is no requirement that the prisoner be constantly supervised or watched over by prison officials. [Citation omitted.] The key factor is that prison officials have not evidenced an intent to abandon or give up their prisoner, leaving him free to go on his way."

The discussion of custody in *Pritchett* has been favorably cited in at least one case since the definition of custody was codified in K.S.A. 21-3809, indicating the analysis applied there is still valid. See *State v. Garrett*, 235 Kan. 768, 772-73, 684 P.2d 413 (1984).

There was nothing to show that the officials of KCIL had evidenced any intent to abandon or give up Pichon, leaving him free and unrestrained to go on his way. Furthermore, a long line of cases demonstrates that a prisoner remains in custody of the facility where he is detained, although beyond its confines for various authorized reasons. See *United States v. Rudinsky*, 439

F.2d 1074 (6th Cir. 1971) (while on work release); *Tucker v. United States,* 251 F.2d 794 (9th Cir. 1958) (while in private hospital for treatment); *State v. Williams,* 208 Kan. 480, 493 P.2d 258 (1972) (in outside dormitory); *State v. Gordon,* 203 Kan. 69, 453 P.2d 80 (1969) (in outside barracks); *Commonwealth v. Hughes,* 364 Mass. 426, 305 N.E. 2d 117 (1973) (while on furlough).

Pichon was in custody, as that term is used in K.S.A. 21-3810, at the time of his escape. As Pichon has not suggested the absence of any other element of the crime charged, we find, after a review of all the evidence, viewed in a light most favorable to the pros- ecution, that a rational factfinder could have found Pichon guilty beyond a reasonable doubt.

Affirmed.