NOT DESIGNATED FOR PUBLICATION

No. 114,525

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHAVEZ WILLIAMS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed January 13, 2017. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before PIERRON, P.J., ATCHESON and ARNOLD-BURGER, JJ.


*Per Curiam*:  Defendant Chavez Williams appeals his convictions for burglary and theft on the grounds the Reno County District Court erred in declining to instruct the jury on a defense of compulsion. Nothing in the trial evidence—including Williams' own testimony—established a factual basis for the defense. For the first time on appeal, Williams also disputes a portion of the restitution award for damage to the store he burglarized because the jury acquitted him of criminal damage to property. His complaint about the restitution fails both procedurally and substantively. We, therefore, affirm the convictions and the sentence.

1

In June 2014, Williams broke into a convenience store in Pretty Prairie and stole several cartons of cigarettes. The next day, the owner of the store found a broken window but couldn't identify any missing merchandise. The crime came to light a couple of weeks later when two men brought packs of cigarettes to the store and explained to the owner that Williams had asked them to hold on to the cigarettes. According to the men, Williams said he had gone into the store through a back window and stole the cigarettes. The owner then reported the break-in to the police.

Reno County Sheriff's Deputy Andrew Soule investigated the crime. Conveniently, Williams had taken up residence at the Reno County jail as the result of another criminal charge. During the second of two interviews with Deputy Soule, Williams admitted breaking into the convenience store and stealing six cartons of cigarettes. According to Williams, he had been hanging around with Mason Phillips and Gage Benson, and the three wound up in the parking lot behind the store after it had closed for the day. In Williams' account of the caper, Benson jokingly suggested breaking into the store and stealing some merchandise. Phillips went to the back window and broke it with his elbow. Phillips then announced that either Williams or Benson had to go inside and take some stuff and if they didn't, he knew people who would come find them if they "ratted" on him for breaking the window. At trial, Williams testified that he understood Phillips to be making a threat to have him beaten up sometime in the future if he didn't participate in the break-in. Williams told the jurors that's why he entered the store and took the cigarettes. The State called Phillips and Benson as witnesses. Each of them denied participating in the break-in or even being at the convenience store with Williams.

The State charged Williams with burglary, a felony; misdemeanor theft; and misdemeanor criminal damage to property. Williams asked the district court to instruct

the jury on compulsion as a defense. See K.S.A. 2015 Supp. 21-5206(a). The district court refused because the evidence taken in the best light for Williams would not support the defense. The jury convicted Williams of burglary and theft and found him not guilty of criminal damage to property.

The district court later sentenced Williams to 16 months in prison for the burglary and a concurrent jail term of 12 months for the theft and placed him on probation for 24 months. The State asked the district court to order Williams to pay $119.50 in restitution to the owner of the convenience store, itemized this way:  $89.80 for the stolen cigarettes; $12.20 for a replacement window; and $17.50 for labor to install the new window. Williams' trial lawyer told the district court Williams had no objection to the restitution. The district court ordered restitution as the State had requested. Williams has appealed.

LEGAL ANALYSIS

On appeal, Williams contends the district court erred in refusing to instruct the jury on compulsion and in ordering him to pay $29.70 in restitution for repair of the broken store window. We take those points up in that order.

*Compulsion Defense*

The defense of compulsion excuses otherwise criminal conduct, except for murder or voluntary manslaughter, if an individual acts because of a threat of "the imminent infliction of death or great bodily harm" on him or her or on a member of his or her immediate family. K.S.A. 2015 Supp. 21-5206(a). In that circumstance, the person commits all of the elements of the coerced crime but does so not with a requisite bad intent or moral blameworthiness but to avoid serious injury or death. The law generally treats that sort of compelled conduct as insufficiently culpable to be criminally punished. See *United States v. Mitchell*, 725 F.2d 832, 835 (2d Cir. 1983); *McMillan v. State*, 428

3

Md. 333, 348-51, 51 A.3d 623 (2012); *State v. St. Clair*, 262 S.W.2d 25, 27-28 (Mo. 1953) (recognizing defense of compulsion or duress and reversing robbery conviction). But intentional homicides traditionally have been excepted from the compulsion defense based on a moral judgment that a person may not kill with impunity to avoid his or her own threatened death. *McMillan*, 428 Md. at 350-51.

As the language of K.S.A. 2015 Supp. 21-5206(a) reflects, compulsion requires an immediate threat of grave physical harm. See *State v. Matson*, 260 Kan. 366, 385, 921 P.2d 790 (1996); *State v. Pichon*, 15 Kan. App. 2d 527, 536, 811 P.2d 517 (1991) (compulsion defense no longer available to defendant "once the immediate threat . . . had passed"). The paradigmatic case of compulsion or duress as a defense is the person who acts with a gun to his or her head. So threats that might be carried out at some abstract future time don't constitute compulsion within the scope of K.S.A. 2015 Supp. 21-5206(a). *Matson*, 260 Kan. at 385. Implicit in the immediacy requirement is some reasonable basis to believe the person making the threat also has the present ability to carry it out. See *State v. Anderson*, 287 Kan. 325, 197 P.3d 409 (2008) (objective standard of reasonableness applicable to compulsion defense).

Here, the temporal component of a colorable compulsion defense effectively undoes Williams' claim. In his own testimony, Williams described a sort-of threat from Phillips resting on Phillips' suggestion he or someone else might do something if the break-in were traced to him. Phillips, of course, disavowed any connection to the crime. The only evidence of the purported threat was Williams' description to the jury. The testimony fails to come close to depicting an immediate threat. At best, the threat was conditional and remote.

The nature of the threat itself was similarly abstract. According to Williams, Phillips didn't describe what would happen. Williams inferred he might be beaten up. That sort of inference about a vaguely described event that might (or might not) take

4

place in the indeterminate future also likely fails to qualify as a threat of death or great bodily harm.

A district court is obligated to instruct a jury on affirmative defenses that have some support in the evidence. K.S.A. 2015 Supp. 21-5108(c) ("A defendant is entitled to an instruction on every affirmative defense that is supported by competent evidence."). In K.S.A. 2015 Supp. 21-5108(c), the legislature also codified what essentially had been the accepted common-law definition of competent evidence by describing it as that evidence "allow[ing] a rational fact finder to reasonably conclude . . . the defense applies." See *Anderson*, 287 Kan. at 334 (common-law standard for instructing on defense requires "'evidence which, viewed in the light most favorable to the defendant, is sufficient to justify a rational factfinder finding in accordance with the defendant's theory'"). Measured against that standard, Williams failed to present evidence that, even if believed, would support a compulsion defense. Accordingly, the district court properly refused to provide an instruction to the jury on compulsion.

We, therefore, find no error in that respect and affirm Williams' convictions for burglary and theft.

*Restitution Order*

For his other point on appeal, Williams contends he should not have been assessed $29.70 in restitution for the repair of the broken store window. As we have mentioned, Williams acceded to the district court's restitution order without objection. He has raised the challenge for the first time in this court. To avoid the customary bar to consideration of issues raised for the first time on appeal, see *State v. Holt*, 298 Kan. 469, 481, 313 P.3d 826 (2013) (noting and applying rule), Williams characterizes that part of the restitution order as an illegal sentence covered by K.S.A. 22-3504(1). As provided in K.S.A. 22-3504(1), a court may correct an illegal sentence at any time. Williams submits that

5

ordering restitution for the broken window amounts to an illegal sentence because the jury acquitted him of criminal damage to property, a charge based on that damage to the store.

We doubt Williams accurately casts the restitution order as an illegal sentence correctable under K.S.A. 22-3504. Although K.S.A. 22-3504 does not define an illegal sentence, the Kansas Supreme Court has held that a motion may be brought under the statute only when the sentencing court lacks jurisdiction, a sentence fails to conform to the law either in character or term of punishment, or the sentence is in some material way ambiguous as to how it must be satisfied. *State v. Sims*, 294 Kan. 821, Syl. ¶ 3, 280 P.3d 780 (2012). Here, the district court had jurisdiction, and there is nothing ambiguous about the restitution order. Williams doesn't argue otherwise. But with respect to the broken window, he says the restitution order represents an impermissible sentence because of its character or term. We think not.

Restitution is not only an authorized component of a sentence for a defendant placed on probation but a mandatory one. K.S.A. 2015 Supp. 21-6607(c)(2). So restitution, by its character, obviously conforms to the law. That is, the law permits restitution as a form of punishment. But punishment by ducking stool, for example, presumably would be an illegal sentence in Kansas because of its character. Nowhere is it or anything like it authorized in the sentencing statutes.

Similarly, the restitution order for the broken window did not exceed an authorized "term" of punishment. An unauthorized term would be one that differs from the statutorily permitted or required degree of punishment. For example, we have held that a district court illegally sentences a defendant by imposing a finite term of postrelease supervision for sex crimes that statutorily require mandatory lifetime postrelease supervision. See *State v. Rau*, No. 115,228, 2016 WL 7031971 (Kan. App. 2016) (unpublished opinion). And misclassifying a defendant's past convictions for

6

criminal history purposes also results in an illegal sentence if he or she is then assigned too high a presumptive guideline punishment. See *State v. Dickey*, 305 Kan. 217, 220-22, 380 P.3d 230 (2016). Fines exceeding the statutory limits in K.S.A. 21-6611 would amount to illegal sentences. But there is no comparable monetary cap on restitution.

A restitution award of $29.70 is of a character and term permitted under Kansas law. Accordingly, Williams cannot invoke K.S.A. 22-3504 as a way to circumvent his failure to dispute a portion of the restitution order in the district court. He presents no other grounds for considering his claim of error for the first time on appeal. That is sufficient to affirm the district court's order.

Even on the merits, however, Williams' challenge fails. As provided in K.S.A. 2015 Supp. 21-6607(c)(2), a district court placing a criminal defendant on probation "shall order the defendant to . . . make reparation or restitution to the aggrieved party for the damage or loss *caused by* the defendant's crime." (Emphasis added.) The amount of restitution and how it should be paid largely rest within the district court's discretion and typically will be reviewed on appeal for abuse of that authority. See *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). A district court exceeds judicial discretion if it rules in a way no reasonable judge would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Here, the relevant facts are undisputed. Williams' argument turns on the legal principles or framework governing restitution and whether the district court's order conformed to those principles. The issue functionally presents a question of law.

Defendants may be ordered to pay restitution only if the loss has been caused by their crimes of conviction unless they have agreed to pay restitution for crimes that were

never charged or have been dismissed. *State v. Dexter*, 276 Kan. 909, Syl. ¶ 3, 80 P.3d 1125 (2003); *State v. Chandler*, No. 107,111, 2013 WL 1234223, at *2 (Kan. App. 2013) (unpublished opinion). The Kansas Supreme Court has recognized the language in K.S.A. 2015 Supp. 21-6607(c)(2) does not require a *direct* causal link between the crime and the loss—an indirect connection may be sufficient. In discussing the predecessor to K.S.A. 2015 Supp. 21-6607(c)(2), the court said: "Although not all tangential costs incurred as a result of a crime should be subject to restitution, [citation omitted], there is no requirement that the damage or loss be 'directly' caused by the defendant's crime." *State v. Hall*, 298 Kan. 978, 990, 319 P.3d 506 (2014). It made the same point in *State v. Hand*, 297 Kan. 734, 739, 304 P.3d 1234 (2013) ("[T]he statute's reference to damage or loss 'caused by' a defendant's crime is not modified by the adverb 'directly.'").

Williams argues that because he was acquitted of the criminal damage to property charge, he cannot be required to pay restitution for the broken window, since that was the damage. There is, of course, an undeniable surface logic to the argument. And it would be valid if the criminal damage to property charge were the only one related to the break-in at the store. A defendant who has been acquitted of all of the charges against him or her associated with a criminal episode can't be punished in any way for that episode. But the jury here did convict Williams of burglarizing the store and stealing the cigarettes.

In turn, the burglary conviction bears a sufficient causal relationship to the broken window to support a restitution order for that damage. There is, at the very least, an indirect connection of the sort sufficient under K.S.A. 2015 Supp. 21-6607(c)(2) to require restitution. The burglary count required the State to prove Williams entered or remained in the store without the owner's authority and with the intent to commit a theft there. K.S.A. 2015 Supp. 21-5807(a)(1). Breaking the window was the means of entry and, therefore, entailed an integral part of the burglary. That causal connection sufficiently supports a restitution order for the damage. See *State v. Miller*, 51 Kan. App. 2d 869, 873-74, 355 P.3d 716 (2015) (damage to building done when entering as part of a

burglary properly included in restitution order). Had the State never charged Williams with criminal damage to property—so the jury would not have rendered a verdict on it one way or the other—the restitution order plainly could have (and should have) included the cost of repairing the window based on the burglary conviction.

Moreover, evidence from the trial proved the requisite causal connection between the burglary and the damage to the store necessary for the restitution order. Williams testified that he acted in concert with Phillips and Benson to break into the store and steal the cigarettes. By his own admission under oath, Williams acted as a coconspirator and an aider and abettor of the burglary and theft, including Phillips' breaking of the window to gain access to the store—assuming he wasn't coerced into participating (and he wasn't). All of that establishes an unbroken connection between the burglary and the damage to the window. The broken window was part and parcel of the burglary, according to Williams. The connection is more than sufficient to impose restitution on him for the repairs.

In short, the jury's decision to convict Williams of the burglary coupled with his own testimony at trial furnished adequate factual and legal bases for the district court to order him to pay restitution for the repair of the window. He can't escape the legal consequences of his admissions at trial that render him a culpable participant in the burglary. The jury's decision to acquit Williams of criminal damage to property neither negates that evidence nor breaks the causal connection between the burglary and the broken window for purposes of imposing restitution on him consistent with K.S.A. 2015 Supp. 21-6607(c)(2). *Cf. State v. Hargrove*, 48 Kan. App. 2d 522, 559, 293 P.3d 787 (2013) ("This court may consider evidence relevant to both charges in deciding whether the record supports the jury's guilty verdict on attempted aggravated burglary irrespective of the not guilty verdict on the criminal damage to property charge.").

9

We typically ought not read very much into verdicts convicting defendants of some charges and acquitting them of other, related charges. General verdicts tend to be inscrutable as to a jury's reasoning or motives in arriving at what sometimes seem discordant conclusions on interlocking charges. Courts may take into account all of the trial evidence in considering the sufficiency of that evidence to support guilty verdicts even when defendants have been acquitted of related or even predicate crimes. As the *Hargrove* court explained:

"In *Powell,* a unanimous Supreme Court acknowledged that a jury's not guilty verdict on one charge may appear inconsistent with its guilty verdict on another charge against the same defendant. But a reviewing court typically should not try to look behind the verdicts to discern a particular motive, purpose, or meaning in the jury's actions. See [*United States v. Powell*], 469 U.S. [57] at 64–65, [105 S.Ct. 471, 83 L. Ed.2d 416 (1984)]. The jurors might have been confused about how to perform their duty, resulting in seemingly discordant verdicts. Or they may have chosen to show lenity toward the defendant by returning a not guilty verdict on one or more charges despite the evidence and the instructions—exercising the absolute, if unsanctioned, power of nullification afforded juries in criminal cases. A court, however, cannot insightfully analyze the basis for the result and, therefore, ought not impute a particularized meaning to it. 469 U.S. at 65–67. Delving into a jury's verdicts to accurately discern what may have prompted them insinuates the court into processes that have typically and traditionally been treated as nearly sacrosanct. 469 U.S. at 67.

"In turn, the *Powell* Court recognized that inconsistent verdicts should not influence the review of a defendant's challenge to the sufficiency of the evidence supporting the offense on which a jury brought back a guilty verdict. The Court stated: 'Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. [Citations omitted.] This review should be independent of the jury's determination that evidence on another count was insufficient.' 469 U.S. at 67. The Kansas Supreme Court embraced the reasoning of *Powell* and drew heavily from that decision in [*State v.*] *Beach,* 275 Kan. [603] at 618–20, [67 P.3d 121 (2003)]." *Hargrove*, 48 Kan. App. 2d at 560.

10

The rationale of *Powell* and *Beach* should apply with equal force to the restitution issue before us. If a court can consider evidence to support a jury's guilty verdict on one charge notwithstanding an acquittal on another charge largely dependent upon much of the same evidence, surely that court must be able to consider the evidence in assessing restitution against a duly convicted wrongdoer. Accordingly, the district court properly ordered Williams to pay restitution for the broken window, since he admitted being a participant in the burglary that directly resulted in the damage and the jury convicted him of that crime.[*]

[*]In this case, there is a fairly logical explanation for the jury's split verdict, apart from confusion or nullification. The jury was never instructed on the criminal liability of aiders and abettors. See PIK Crim. 4th 52.140 (person responsible for any other crime committed in carrying out the intended crime if the other crime is reasonably foreseeable). The jury appears to have generally credited Williams' version that he acted in concert with Phillips and Benson—otherwise it would have convicted him of all three charges. But in Williams' account, Phillips actually broke the window. Without being informed of the law on aiding and abetting, the jury reasonably could have concluded Williams should not be convicted of criminal damage to property because he personally didn't break the window even though that act was essential to the burglary. The State's theory of the case had Williams acting alone, and it called Phillips and Benson to testify to that effect. In keeping with that testimony, the State did not argue the jury should convict based on the concerted action of Williams, Phillips and Benson. Nor did it request jury instructions, such as PIK Crim. 4th 52.140, consistent with concerted action. The jury wasn't so much confused about the law as it was less than fully informed. Of course, it's entirely possible the jury accepted the State's theory and simply found the criminal damage to property charge to be prosecutorial piling-on, leading to a limited exercise of nullification. Regardless, however, Williams' burglary conviction supports the restitution award.

Affirmed.