(953 P.2d 685)
No. 77,572

STATE OF KANSAS, *Appellee*, v. JESSE W. ALEXANDER, *Appellant*.

Opinion filed February 6, 1998.

*Debra J. Wilson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*David Lowden*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before PIERRON, P.J., GREEN and MARQUARDT, JJ.

PIERRON, J.: Jesse W. Alexander appeals his conviction of one count of driving while being declared a habitual violator, a severity level 9 nonperson felony, in violation of K.S.A. 1995 Supp. 8-287. Alexander argues the district court erred in granting the State's motion in limine which prohibited him from presenting certain evidence which he claimed established a defense under K.S.A. 21-3209, the compulsion defense.

Alexander was charged with driving while being declared a habitual violator. The State filed a pretrial motion in limine requesting that Alexander be prohibited from relying on the defense of compulsion at trial.

The facts in this case are undisputed. At the hearing on the motion in limine, Alexander presented the following facts. Alexander was 46 years old and had worked for Boeing Military Airplanes for the last 10 years. He left Boeing because he had blackouts and partial paralysis. Alexander testified that due to his muscle problems, he sometimes falls down and is unable to get up. He also stated he cannot walk long distances because of leg cramps and has been bedridden as a result of walking.

Alexander explained that at 4:30 p.m. on the day of his arrest, he received a phone call from Mosell Jordan, who was pregnant with his child. Jordan was having problems with her pregnancy and

had been hospitalized for a week and a half because her water broke too early but was then staying at the treatment center. Jordan told Alexander that she thought the baby was coming and she feared she was in danger of losing the baby. Alexander drove to the treatment center.

After he arrived, Jordan told Alexander that she had lost a considerable amount of water. Jordan had called her doctor and was instructed to come to the hospital if she lost any more water. Jordan and Alexander waited approximately 2 hours to see if Jordan's condition worsened. Everything was fine. Pursuant to the rules of the treatment center, Alexander was not permitted to stay overnight. Alexander testified that he had no friends or relatives he could call to come pick him up. He got in his truck and started driving home. On the way home, a woman ran a red light and struck his vehicle. Pursuant to the accident investigation Alexander was later charged with driving while a habitual violator.

Before trial, the district court granted the State's motion in limine. The court ruled:

"Well, this is one of those tough situations that when a Court looks at the circumstances, the Court can certainly feel some compassion for Mr. Alexander's situation. And the Court can even go so far as to say that it can understand why a person in Mr. Alexander's situation will behave the way he did. But the Court is duty-bound to follow the law. The Court can't act on impulse. And the law in this area is clear, the threat that we're speaking about must be imminent. It must be imminent threat of death or great bodily harm, and there must be proof of it. There can't be speculation. Court believes that that's what we have in this case. And not only that, although that, in and of itself, I think, is reason to sustain the motion, but we also have a situation here, and again, I can understand why a person in Mr. Alexander's situation would behave the way he did, but we have a situation where he willfully drove a car knowing that his license was revoked, he willfully placed himself in a situation in which, based on his own testimony, his medical condition, in which it was foreseeable that because of his illness—illness he would be compelled to drive. He substantially contributed to the creation of the circumstances in question. And I—I heard no—no testimony at all of any effort on his part to exhaust alternatives, in terms of—of trying to get some transportation from someone else. I think under those circumstances, why, Court has no choice but to sustain the motion. That'll be the Court's order."

After the court granted the motion in limine, Alexander agreed to a bench trial on stipulated facts. Defense counsel preserved the

motion in limine for purposes of appeal. The district court found Alexander guilty of driving while a habitual violator. The court denied Alexander's motion for judgment of acquittal and motion for new trial and sentenced him to 24 months' probation.

Alexander argues the facts of this case indicate the district court erred in granting the State's motion in limine and in doing so prevented him from presenting his theory of defense.

The exclusion of evidence to support a compulsion defense is not subject to the normal abuse of discretion standard for reviewing a trial court's evidentiary rulings. Whether the compulsion defense is available to a defendant is a matter of law determined by the court. *State v. Kelly*, 21 Kan. App. 2d 114, 115, 896 P.2d 1101, *rev. denied* 258 Kan. 861 (1995); *State v. Pichon*, 15 Kan. App. 2d 527, 536, 811 P.2d 517, *rev. denied* 249 Kan. 778 (1991).

The compulsion defense is set out in K.S.A. 21-3209:

"(1) A person is not guilty of a crime other than murder or voluntary manslaughter by reason of conduct which he performs under the compulsion or threat of the imminent infliction of death or great bodily harm, if he reasonably believes that death or great bodily harm will be inflicted upon him or upon his spouse, parent, child, brother or sister if he does not perform such conduct.

"(2) The defense provided by this section is not available to one who willfully or wantonly places himself in a situation in which it is probable that he will be subjected to compulsion or threat."

Alexander relies on *State v. Irons*, 250 Kan. 302, 827 P.2d 722 (1992), where the court stated in general that it is fundamental for a fair trial to allow the accused to present his or her version of the events so that the jury may properly weigh the evidence and reach its verdict. The court also stated that the right to present one's theory of defense is absolute and that motions in limine are not to be used to choke off a valid defense in a criminal action. 250 Kan. 302, Syl. ¶¶ 2, 3.

Alexander does not cite *Irons* for any factual similarity. Instead, he argues his case is similar to *Irons* because both cases dealt with motions in limine preventing a defendant from presenting evidence regarding his motive for breaking the law and the trial court's granting of the motion on the grounds that as a matter of law the defense was not available to the defendant. The *Irons* court re-

versed the Kansas Court of Appeals, which upheld the trial court. Alexander cites the *Irons* court's reliance on the dissenting opinion in the Court of Appeals' decision where Judge (now Justice) Davis stated:

" 'Whether it was a viable defense depends upon the jury's determination of the evidence at trial. To say under the facts of this case that the defense of compulsion is not available is to deny the defendant a fair trial by preventing him from presenting to the jury the only theory of defense he had.' " 250 Kan. at 308.

Alexander also cites *State v. Hunter*, 241 Kan. 629, 740 P.2d 559 (1987), where the trial court refused to instruct the jury on the defense of compulsion. Again, Alexander does not cite *Hunter* for any factual similarity. Rather, he merely cites *Hunter* for the court's conclusion:

"It was the function of the jury as the exclusive trier of fact to determine if it was believable that Hunter was afraid for his life, if such fear was reasonable, and if such fear justified any criminal acts which Hunter may have performed. When the trial judge refused the requested compulsion instruction, he effectively prevented the jury from considering the evidence presented in Hunter's defense. This denial of the jury's right to determine the facts constitutes reversible error." 241 Kan. at 646.

The State cites several cases where courts held that a compulsion defense was not available to the defendant. In *State v. Kelly*, 21 Kan. App. 2d at 118, the court concluded that the compulsion defense to escape from custody does not apply where the imminent threat was not to the inmate, but to third parties. In *State v. Riedl*, 15 Kan. App. 2d 326, 330-31, 807 P.2d 697 (1991), the court listed eight traffic violation cases from other jurisdictions where the courts concluded the evidence was insufficient to raise the defense of compulsion.

In *State v. Pichon*, 15 Kan. App. 2d 527, the court considered the compulsion defense in the context of an aggravated escape from custody. The *Pichon* court found the trial court did not err in refusing to call certain witnesses supporting Pichon's compulsion defense since Pichon did not try to turn himself in when the immediate threat of harm had passed and he had a reasonable opportunity to escape the compulsion without committing a crime.

15 Kan. App. 2d at 536. Of import to the case at bar, the court related the following principles:

"In order to constitute the defense of compulsion, the coercion or duress must be present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The doctrine of coercion or duress cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm. In addition, the compulsion must be continuous and there must be no reasonable opportunity to escape the compulsion without committing the crime." 15 Kan. App. 2d 527, Syl. ¶ 6.

The district court ruled that Alexander's imminent threats of death or great bodily harm were speculative, that he substantially contributed to the creation of his situation by willfully driving to the treatment center knowing that his license had been revoked, and that he presented no evidence of any effort on his part to exhaust alternatives to driving. There is no evidence in the record contradicting any of these findings.

We find the district court did not err in granting the State's motion in limine. First, although there was arguably an emergency situation, without the involvement of a third party making a threat, it is difficult to see any "compulsion." Even if we would give compulsion the enlarged definition to include emergency, there was no factual basis for it here. Alexander conceivably had a claim of compulsion/emergency had he been caught driving on the way to see Jordan. However, once the emergency situation subsided, all possible compulsion equally subsided. When Alexander got into his truck to return home, he had no threat of any compulsion. Alexander did not have a well-grounded apprehension of death or serious bodily injury if he did not drive home. The fact he could not stay the night at the treatment center, that walking was bad for his health, and that he had no friends he could call and no money for a taxi is not sufficient evidence of compulsion. Rather, those facts establish nothing more than a severe inconvenience to Alexander.

Affirmed.