(202 P.3d 21)

No. 98,447

STATE OF KANSAS, *Appellee,* v. WILLIS HARVEY, *Appellant.*

Opinion filed February 13, 2009.

*Rachel Pickering,* of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Stephen N. Six,* attorney general, for appellee.

Before RULON, C.J., GREENE, J., and LARSON, S.J..

RULON, C.J.: Defendant Willis C. Harvey appeals from his conviction and sentence for aggravated escape from custody. We affirm in part, reverse in part, and remand for further proceedings.

## Underlying Facts

On the afternoon of September 19, 2006, the defendant, an inmate at the Wichita Work Release Facility, presented a "miscellaneous community pass" to the corrections officer working the control center at the facility. The defendant's pass was for 30 minutes on the "walk route," and the officer allowed the defendant to leave after signing the accountability log. The defendant was supposed to return by 1:10 p.m., but he did not return to the facility that day. The defendant was declared an escapee, and a search was conducted of the facility without success.

The defendant did not return to the facility on September 19 or 20, 2006. On the afternoon of September 21, the defendant turned himself in at the Sedgwick County Adult Detention Facility.

Eventually, the State charged the defendant with one count of aggravated escape from custody, in violation of K.S.A. 21-3810(a)(7). Before trial, the State moved to exclude the compulsion defense, contending the defendant did not meet all the conditions under *State v. Irons*, 250 Kan. 302, 307-09, 827 P.2d 722 (1992), to assert the defense. The district court denied the State's motion.

At trial, the defendant testified he left the facility because he believed he was going to be killed that day, did not trust anyone at the facility, and wanted to talk to his ex-wife about the situation as she was the only person he trusted. According to the defendant he was afraid he was going to be harmed by members of a skinhead gang at the facility. When the defendant finally talked with his ex-wife on September 21, she convinced him to turn himself in. The defendant supported his compulsion defense with the testimony of his ex-wife and through cross-examination of the State's witnesses.

The defendant requested and the district court gave the jury a compulsion instruction. The instruction given read:

"Instruction No. 7

"Compulsion is a defense if the following exist:

"1. The defendant is faced with a threat of imminent infliction of death or great bodily harm;

"2. There is no time for complaint to the authorities or there exists a history of futile complaints which makes any result from such complaints illusory;

"3. There is no time or opportunity to resort to the courts;

"4. There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and

"5. The defendant immediately reports to the proper authorities when he has attained a position of safety from the imminent threat."

This instruction is nearly word-for-word with the elements for the defense set forth in *Irons*, as contained in the Comment on PIK Crim. 3d 54.13.

In the course of its deliberations, the jury sent two questions to the court regarding the instruction. The first question was: "Do we have to accept all 5 things on Instruction No. 7 in order to return a verdict of not guilty?" The district court answered: "Yes." The second question was: "Is the State responsible for proving the following 5 points didn't exist or is the defense responsible for proving they did exist. (Instruction #7)." The district judge answered this question in open court:

"The answer to this question I'm going to read out of the PIK instruction. These are the Pattern Instructions of Kansas. And this is from the comment section.

"A person charged with escape from lawful custody may not claim the defense of compulsion unless the following conditions exist.

"The defendant has the responsibility to show that those conditions existed.

"Thank you. That's your answer."

The jury was unable to reach a unanimous verdict, and the district court declared a mistrial.

Prior to the second trial, the State renewed its motion to exclude the compulsion defense. The State argued the evidence presented at the first trial showed the elements of the compulsion defense had not been met. The defendant argued due process required he be allowed to present the compulsion defense and the hung jury showed the defense was relevant. The district judge ruled:

"I think that hung jury was pretty much my fault last time. But once I heard the evidence, I was positive about the compulsion. I'm taking the blame, or credit, I don't know which. I'm not saying it's bad or good, I don't care, it doesn't matter to me whether we get a verdict, other than I feel I've not done my job correctly. It can be guilty or not guilty, but I just want a verdict. I've given this great consideration. And after hearing the defendant's testimony, the entire thing, it did not rise to a compulsion defense.

"In fact, it is case law that sets forth the elements. It's unpublicized. I believe it was an unpublished opinion, but it very clearly set forth what needed to be

proved in order to use a compulsion defense with a aggravated escape from custody, very clear.

"I'm going to allow [the defendant] to testify as to whatever he feels he needs to testify, but I will not instruct on compulsion. And you won't argue, I won't allow you to argue it either, so."

In accordance with this ruling, the district court later clarified that no witness at the second trial, other than the defendant, would be allowed to testify as to the defendant's reasons for leaving or the alleged threats by the skinhead gang.

At the second trial, the defendant repeated much of his testimony from the first trial. Likewise, the defendant proffered the testimony of the witnesses from the first trial corroborating the defendant's reasons for leaving the facility.

The district court rejected the defendant's request for a compulsion instruction, and the jury found the defendant guilty of aggravated escape from custody. The district court imposed the mitigated presumptive sentence of 122 months' incarceration and ordered the defendant pay $3,200 in BIDS attorney fees, but it directed the Department of Corrections to determine the defendant's ability to pay these fees upon his release.

## The Compulsion Defense

On appeal, the defendant first argues he was deprived of his constitutional right to a fair trial and his right to present a defense because the district court prevented him from presenting a compulsion defense, which was his only theory of defense.

The State contends the district court properly precluded a compulsion defense under the relevant Kansas statute and case law. Whether the compulsion defense is available to a defendant is a matter of law determined by the court. *State v. Alexander*, 24 Kan. App. 2d 817, 819, 953 P.2d 685 (1998). This court has unlimited review of such determinations. See *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007).

The *Alexander* court stated that "[t]he exclusion of evidence to support a compulsion defense is not subject to the normal abuse of discretion standard for reviewing a trial court's evidentiary rulings." 24 Kan. App. 2d at 819. However, in other cases our appel-

late courts have applied an abuse of discretion standard to the district court's decision to exclude testimony supporting the compulsion defense. See *Irons,* 250 Kan. at 306-09; *State v. Kelly,* 21 Kan. App. 2d 114, 115-18, 896 P.2d 1101, *rev. denied* 258 Kan. 861 (1995).

The compulsion defense is set forth in K.S.A. 21-3209, which states:

"(1) A person is not guilty of a crime other than murder or voluntary manslaughter by reason of conduct which he performs under the compulsion or threat of the imminent infliction of death or great bodily harm, if he reasonably believes that death or great bodily harm will be inflicted upon him or upon his spouse, parent, child, brother or sister if he does not perform such conduct.

"(2) The defense provided by this section is not available to one who willfully or wantonly places himself in a situation in which it is probable that he will be subjected to compulsion or threat."

Our case law has added requirements to the compulsion defense when a defendant seeks to use it in an escape from custody case. In such a case, the defense is not available unless: (1) the inmate faced a specific threat of imminent infliction of death or great bodily harm; (2) there was no time for a complaint to the authorities or there was a history of futile complaints making any result from such complaints illusory; (3) there was no time or opportunity to resort to the courts; (4) there is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and (5) the inmate immediately reported to the proper authorities once he or she attained a position of safety from the imminent threat. *Irons,* 250 Kan. at 307-09.

Kansas cases have followed the majority of jurisdictions in requiring a defendant to present or proffer evidence to the court satisfying all five conditions before the defendant is allowed to present the defense to the jury. See *Irons,* 250 Kan. at 307; *Alexander,* 24 Kan. App. 2d at 819-21; *Kelly,* 21 Kan. App. 2d at 115-18; *State v. Pichon,* 15 Kan. App. 2d 527, 534-35, 811 P.2d 517, *rev. denied* 249 Kan. 778 (1991).

The *Irons* decision instructs Kansas courts to take great care before determining the compulsion defense is unavailable to an escapee, as "motions in limine are not to be used to 'choke off a

valid defense in a criminal action' " and " '[i]t is fundamental to a fair trial to allow the accused to present his version of the events so that the jury may properly weigh the evidence and reach its verdict. The right to present one's theory of defense is absolute.' " 250 Kan. at 309. We may conclude from *Irons* the compulsion defense should only be ruled unavailable where the evidence offered by the defendant, viewed in the light most favorable to the defendant, could not provide a substantial basis of fact to reasonably conclude all five required elements were satisfied. See *Irons*, 250 Kan. at 309; 23A C.J.S., Criminal Law § 1738 ("[C]ompulsion is an affirmative defense which should not be considered by the jury unless there is substantial evidence to support it."); see also *State v. Walker*, 283 Kan. 587, 594-95, 153 P.3d 1257 (2007) (defining "substantial evidence").

The question here is whether the evidence offered by the defendant as to the five elements entitled him to present his compulsion defense to the jury.

First, the defendant had to face a specific threat of imminent infliction of death or great bodily harm. At the first trial, the defendant testified he "was in a state to believe that [he] was going to be killed that day because of some things in [his] past." According to the defendant he had been "running from facility to facility" from the skinhead gang, that one of the gang leaders had recently arrived at the facility, and on the day of the escape, two gang members approached him but were stopped when a corrections officer came into the area. The defendant testified, "I knew what was going down. I didn't have to think twice about it."

At the second trial, the defendant testified the gang members approached him the day of the escape "with some type of vendetta" against him and threatened "to do great bodily harm at me, threatened to take my life at the time." According to the defendant, this incident scared him and made him want to leave the facility.

The defendant's testimony, viewed in the light most favorable to him, satisfies the first requirement.

Next, the defendant had to show there was no time for a complaint to the authorities or there was a history of futile complaints making any result from such complaints illusory. The defendant

conceded he did not report the threat or incident to any of the corrections officers he encountered before his escape because he "didn't trust anybody." This record reflects about 40 minutes passed between the time of the incident and the escape.

The third requirement is there was no time or opportunity to resort to the courts. The State does not appear to challenge this element on appeal. The defendant's testimony was that about 40 minutes passed between the time of the threat incident until the escape. Taking the defendant's evidence as to this requirement in the light most favorable to him, it is unlikely he had the time or opportunity to resort to the courts.

The parties agree there is no evidence the defendant used force or violence in escaping; thus, the fourth element is not at issue.

Finally, the defendant had to show that he immediately reported to the proper authorities once he attained a position of safety from the imminent threat. The defendant conceded at the second trial he was in a position of safety as soon as he left the facility and none of the persons who threatened him followed him out of the facility. Nevertheless, the defendant did not contact the authorities or turn himself in until 2 days after the escape. The defendant asserts he left the facility so he could talk to his ex-wife, the "only person he trusted." However, the defendant admitted his failure to even attempt to contact any authorities for 2 days after his escape.

The defendant compares his situation regarding the fifth element to that of the defendant in *Irons*, where our Supreme Court found the fifth element was satisfied. 250 Kan. at 309-10. However, there are important factual differences between this situation and the situation in *Irons*. In *Irons*, after being threatened, the inmate contacted court and facility officials before, during, and immediately after the time he was supposed to return to the work release facility, and he refused to return to the facility because the officials were not sufficiently responsive to his concerns. Here, on the other hand, the defendant made no attempt to contact court or facility officials for 2 days after he was supposed to return to the facility.

In light of the defendant's admission he had attained a position of safety from the imminent threat once he left the facility, his desire to speak with his ex-wife and the resulting delay do not

provide sufficient evidence, even when viewed in the light most favorable to the defendant, to satisfy the fifth element.

We conclude the evidence offered by the defendant failed to satisfy two of the five elements he was required to show in order to present the compulsion defense to the jury.

*Irons* clearly requires a defendant to proffer evidence meeting the five requirements set forth above before the defendant may present the compulsion defense to a jury. 250 Kan. at 309. The defendant here failed to meet his burden under *Irons*.

The district court did not err in granting the State's motion to exclude the compulsion defense, and it did not abuse its discretion in excluding the testimony offered in support of the defense.

### Compulsion Instruction

Next, the defendant asserts the district court erred in denying his request for a compulsion instruction at the second trial.

The State contends the district court correctly refused the compulsion instruction because the defendant failed to satisfy the threshold requirements for a compulsion defense.

" 'In a criminal action, the district court must instruct the jury on the law applicable to the defendant's theories for which there is supporting evidence. When considering the district court's refusal to give a specific instruction, the evidence must be viewed by the appellate court in the light most favorable to the party requesting the instruction. A defendant is entitled to an instruction on his or her theory of the case even though the evidence thereon is slight and supported only by the defendant's own testimony.' [Citations omitted.]" *State v. Gonzalez*, 282 Kan. 73, 106-07, 145 P.3d 18 (2006).

Here, the above discussion clearly established there was not supporting evidence for two of the elements of the defendant's compulsion defense. As such, the defendant was not entitled to an instruction on the defense, and the district court did not err in refusing the defendant's request for such an instruction.

### The *Robinson* Issue

Finally, the defendant asserts the district court erred in delegating to the Department of Corrections the determination of the defendant's ability to pay the Board of Indigents' Defense Services (BIDS) attorney fees. The defendant contends such order violated

our Supreme Court's directive that the sentencing court consider on the record the financial resources of the defendant and the nature of the burden that payment of the fees would impose. See *State v. Robinson*, 281 Kan. 538, 541-44, 132 P.3d 934 (2006).

The State concedes the district court did not follow the required *Robinson* procedure for assessing fees and thus the case must be remanded for compliance with *Robinson*. We agree.

Clearly, the district court failed to comply with *Robinson*. The attorney fee assessment is vacated, and the case is remanded for further proceedings in compliance with *Robinson* and K.S.A. 22-4513.

We affirm the defendant's conviction and sentence, vacate the BIDS attorney fee assessment, and remand the case with directions.

GREENE, J., concurring: I agree with my colleagues that Willis Harvey's conviction must be affirmed, but I write separately only to express concern about the practice of having the trial court eliminate the defense of compulsion on motion in limine. As our Supreme Court expressed in *State v. Irons*, 250 Kan. 302, 306-09, 827 P.2d 722 (1992), motions in limine should not be used to " 'choke off a valid defense in a criminal action' " because " 'it is fundamental to a fair trial to allow the accused to present his version of the events so that the jury may properly weigh the evidence and reach its verdict. The right to present one's theory of defense is absolute.' " 250 Kan. at 309. Despite this language, our Supreme Court did not expressly forbid the elimination of the defense by motion in limine.

With due respect, I believe the practice of eliminating a criminal defendant's sole defense of compulsion by motion in limine and prior to presentation of the evidence to a jury is a violation of the defendant's fundamental right to a jury trial and otherwise deprives the defendant of his or her right to present a defense. Surely we would not sanction the pretrial deprivation of a criminal defendant of any other affirmative defensive strategy, whether alibi, self-defense, voluntary intoxication, or a host of others. Similarly, I do not

believe we should permit the pretrial elimination of the defense of compulsion; constitutional considerations prohibit the procedure employed here by the district court.

Perhaps our Supreme Court will have occasion to reexamine this practice in the near future. Here, Harvey's own testimony clearly precludes the defense because he admitted that he was "in a position of safety" the instant he left the correctional facility. His failure to report at this time does not satisfy the fifth element of *Irons*, and his conviction must be affirmed.